## EDES v. BOARDMAN & a.

Selectmen, for good cause shown, may abate any tax assessed by them or their predecessors.

An application by petition to the court for abatement of a tax assessed by selectmen is an appeal from the refusal of the selectmen to make such abatement as the appellant asks, and is practically an appeal from the assessment.

The power of appraising property for the purpose of taxation is such judicial power as can be constitutionally exercised by the court on appeal.

On an appeal seasonably taken by one who is not delinquent in the exhibition of an account of taxable polls and estate, the statute makes it the duty of the court to exercise a power of abatement as extensive as that of selectmen, and to make such order as justice requires.

The appeal is an equitable proceeding. However erroneous in law or in fact the assessment may be, only so much of the tax is abated as in equity the appellant ought not to pay. An abatement is not made on account of any error not injurious to him.

When for some property he is overtaxed, and for other property he is undertaxed to an equal or greater extent, in the same assessment, he is not entitled to an abatement; but he is entitled to a correction of the erroneous form of assessment when it is injurious to him.

For any error of law or fact in the assessment, for which a person is entitled to relief, he has a remedy by appeal, mandamus, or other direct proceeding, aimed at the correction or reversal of the assessment; and for such an error he cannot maintain an action for damages against selectmen who acted in good faith.

Selectmen are not liable for assessing a tax in pursuance of an unconstitutional act of the legislature, or an illegal vote of the town.

The construction of statutes is the ascertainment of the intention of the legislature. The question of intention is a question of fact, and is determined by the natural weight of competent evidence, and not by arbitrary rules.

CASE, against the selectmen of Newport, for wrongfully and unlawfully assessing a tax upon the plaintiff in 1875, and compelling him, by a collector's warrant, to pay it.   Facts found by a referee.

In 1871 the town, by written resolution, authorized the issue of its bonds, payable in thirty years, to an amount not exceeding $125,000, for the purpose of funding its existing debts, and providing for the payment of a sum voted by the town in aid of a railroad.   At the same time and by the same vote the town pledged itself to raise by taxation one per cent. of its valuation annually, to be appropriated to the payment of the interest and the principal of the bonds.   In 1872 the town voted to raise a certain sum " in addition to the one per cent., as mentioned in the resolution adopted last year."   In 1873 the town voted to raise a certain sum " in addition to one per cent. mentioned in the resolution adopted year before last."   In 1874 and 1875 the town voted to raise certain sums " in addition to the one per cent. heretofore raised."   In 1875 the defendants included this one per cent. in their assessment, and the plaintiff contends that the assessment was, on that account, illegal.

By *c.* 34, Laws of 1872, the town was authorized to raise and appropriate a sum not exceeding $40,000 for building a court-house and county offices for the use of the county.   In November, 1872, the town voted to raise, by loan, $30,000 under that act, and authorized the selectmen to issue the bonds of the town for any part of the loan. Under this vote bonds were issued to the amount of about $30,000. The hired money was used in the erection of a building containing rooms for the use of the town, as well as rooms for the use of the county.   The plaintiff objects that the act of 1872 is unconstitutional, and that the tax was not authorized by the warrants and votes.

In March, 1873, the town, without any article in the warrant on the subject, voted to exempt from taxation for ten years the capital which shall hereafter be invested in any new manufacturing enterprise in the town, provided the capital is furnished from abroad, or from sources not before legally taxable by the town, and exceeds $5,000.   Upon this vote the defendants omitted to tax all over $3,000 of the value of the mill of Dow & Co., who were residents of the town, and who erected their mill in 1873 for manufacturing doors, windows, and blinds. The taxable value of the mill, as compared with the valuation of other taxable property, was $10,000.   The capital invested in it was mostly the profits realized by them, while residing in Newport, upon a contract for building a church in Vermont.   The plaintiff objects that the act of 1871 (*c.* 25), under which the town passed the vote of exemption, is unconstitutional; that the act is not broad enough to include this class of mills ; and that the vote was not authorized by the statute, or by the article in the warrant.

The plaintiff has long resided in Newport, and in 1875 he owned real estate in the town subject to taxation, consisting of houses, stores, and mills, standing on separate tracts of land, having no natural or business relations to each other to prevent a separate appraisal for purposes of taxation. The plaintiff voluntarily gave the defendants an inventory of his real estate in separate tracts, and requested them to appraise it in separate lots and sums; but, without dooming him, and without assigning any reasons, they did not comply with his request, but appraised the whole at one sum; and by virtue of their warrant he was compelled to pay the tax assessed thereon.

*A. Edes*, for the plaintiff.

The assessment of the one per cent. in 1875, on the vote of 1871 promising to raise one per cent. annually, is illegal. *Lebanon* v. *O. & M. R. Co.*, 77 Ill. 539. There was no article in the town-meeting warrant of 1875 on this subject, on which the town could act.

The act of 1872 (*c.* 34), authorizing the town to build a court-house for the county, is unconstitutional, because (1) it is not a general law applicable to all towns, but is limited to Newport; (2) it imposes an unequal and unreasonable tax on the minority of the tax-payers of Newport opposed to such appropriation of the credit and funds of the town. Bill of Rights, Arts 5, 6; 4 N. H. 565–568. It is not an exercise of the right of eminent domain. *Concord R. R.* v. *Greely*, 17 N. H. 47; *Pet. Mt. Washington R. Co.*, 35 N. H. 134. The court-house built by Newport is a mere gratuity of one municipal corporation to another, to relieve it of its duties, and cast its burdens on others without compensation. *P. Bridge* v. *N. H. Bridge*, 7 N. H. 35; *Eastman* v. *Amoskeag Mfg. Co.*, 44 N. H. 143, 160; *Bristol* v. *New Chester*, 3 N. H. 524, 534, 535. The purpose of the act does not come within the scope of the objects for which the town was incorporated. *Minot* v. *W. Roxbury*, 112 Mass. 1.

The act of 1871 (*c.* 25), authorizing towns to exempt manufacturing establishments from taxation, is unconstitutional, because it delegates legislative power to towns for purposes outside of eminent domain, and not municipal, and authorizes inequalities of taxation for private purposes. Burroughs on Taxation, *ss.* 12, 13, 25; *Brewer Brick Co.* v. *Brewer*, 62 Me. 62; S. C. 13 Am. L. Reg. 735; *Allen* v. *Jay*, 60 Me. 124; S. C. 12 Am. L. Reg. 481; 14 Am. L. Reg. 753; *Jenkins* v. *Andover*, 103 Mass. 94; *Lowell* v. *Boston*, 111 Mass. 454, 473; and authorities before cited. An act producing unequal taxation by exemption is as great a violation of constitutional rights as the imposition of an unequal tax. If property of A, of a kind similar to B's, is exempted, whereby B pays $10 more tax, he suffers as much as he would if a disproportional tax of that amount were levied on him and given to A, and the $10 is taken from him and given to A without compensation. If the statute is constitutional, the vote of the town is not authorized by it, nor in conformity with it, and the mill of Dow & Co. does not come within the terms of the vote.

The assessment of the plaintiff's tax was illegal, because the defendants did not set down in their invoice, in separate columns, the value of the different classes of his real estate as requested by him, and as required by Gen. St., *c.* 52, *ss.* 3 and 4. *People* v. *Hollister*, 47 Cal. 408 ; *People* v. *Mining Co.*, 39 Cal. 511; *Jennings* v. *Collins*, 99 Mass. 29 ; Cooley on Taxation 279, 280, 287. A separate appraisal is necessary when the property is in different school-districts on which taxes are assessed for building school-houses ; when the property is to be sold for taxes, as by Gen. St., *c.* 54, *ss.* 13 and 14 ; when different parcels are mortgaged to different persons, each of whom has an interest in the payment of the tax assessed on the parcel mortgaged to him ; and when an application is made to the court for abatement of a tax. On a petition for abatement, an undervaluation of one of the petitioner's tracts cannot be set off against an overvaluation of another. *Dewey* v. *Stratford*, 42 N. H. 282. And, by appraising the plaintiff's different parcels as one parcel at one sum, the defendants deprived him of the means of obtaining an abatement on a comparison of the appraisal of any one of his parcels with the appraisal of other similar kinds of property belonging to other persons. Such a comparison the plaintiff was entitled to have. *Manchester Mills* v. *Manchester*, 57 N. H. 309. The defendants were guilty of a wilful neglect of a purely ministerial duty, and could have had no reason for their course except to deprive the plaintiff of his legal remedy of abatement.

On each of these grounds, the assessment of the plaintiff's tax was void.

*Barton*, for the defendants.

DOE, C. J. The act of 1719 (Prov. Laws, ed. 1771, p. 139), copied from the Massachusetts act of 1692 (Anc. Charters, p. 250), provides that if any person think himself over-rated in the assessment of taxes, and make it so appear to the selectmen, he shall be eased ; and if they refuse he may make his application to the quarter-sessions, who are empowered to rectify the same. The tax act of 1770 (2 Laws, ed. 1824, p. 218) provides that if any person refuses to render an account on oath, if required, of his ratable estate, the selectmen may make his assessment " by way of doomage," " from which doomage there shall be no appeal." The tax acts of 1772 (2 Laws, ed. 1824, p. 220) and 1776 (Laws, ed. 1780, p. 6) provide at what rates property shall be estimated by the selectmen, " saving a right of appeal to any person aggrieved by such estimation ;" but if any person refuses to render an account, the selectmen may tax him " by way of doomage," " from which doomage there shall be no appeal " unless the person doomed is unable to exhibit an account. The tax act of 1784 prescribes the rates of estimation, " saving a right of appeal to the quarter-sessions," except in case of doomage, " from which doomage there shall be no appeal unless," &c. By the tax act of 1789, any person aggrieved may " apply to the court of general sessions of the peace for abatement, if

denied of redress by the selectmen;" but in case of doomage " there shall be no appeal unless," &c.   By the act of 1791, the general sessions, and by the act of 1827, the court of common pleas, make such order as justice may require; but their power of abatement is limited to cases of doomage, and inability to render an account, and cases of overvaluation *( State* v. *Thompson*, 2 N. H. 236, 238; *Walker* v. *Cochran*, 8 N. H. 166, 170) ; and the appeal must be taken within nine months after notice of assessment and demand of payment.   By the Revised Statutes (*c.* 44) the limitation of the right of appeal to cases of overvaluation is abolished, and that remedy is extended to every case in which the person aggrieved complies with the law relating to the exhibition of an account, and takes his appeal within nine months after notice of his tax.   Gen. St., *c.* 53, *s.* 11.

Selectmen, for good cause shown, may abate any tax assessed by them or their predecessors.   Gen. St., *c.* 53, *s.* 10.   And on appeal, seasonably taken by one who is not delinquent in the exhibition of an account, the statute makes it the duty of the court to exercise a power of abatement as extensive as that of the selectmen, and to make such order as justice requires.   " If justice requires an abatement, that would be good cause for the selectmen to make it.   If good cause of abatement is shown, justice requires the court to make it.   The selectmen and the court have the same authority, in cases rightfully before the court, and they are to administer it on the same principles." *Briggs's Petition*, 29 N. H. 547, 551.   " The authority of selectmen to abate is not in any way restricted : the right of appeal from their decision is expressly conferred."   *Dewey* v. *Stratford*, 40 N. H. 203, 206 ; *Gove* v. *Newton*, 58 N. H. 359, 361.   " The statute remedy is ample and perfect, and applies to all cases," not only when the assessment is made upon an overvaluation, but also when the whole assessment is illegal.   *Savings Bank* v. *Portsmouth*, 52 N. H. 17, 30 ; *Perry's Petition*, 16 N. H. 44.   The application by petition to the court is an appeal from the refusal of the selectmen to make such an abatement as the appellant asks, and is practically an appeal from the assessment.

It was held, in *Auditor* v. *A. T. & S. F. R. R. Co.*, 6 Kan. 500, that the power of appraising property for the purpose of taxation is not such judicial power as can be constitutionally exercised by the judicial branch of the government on appeal.   But the contrary doctrine has prevailed here during the whole period of our constitutional history. An assessment is not necessarily, at every step, a judicial proceeding in the sense which constitutionally requires an opportunity for persons interested to be heard.   " The warrant to a collector, under our statute, is in the nature of an exception, running against the person and property of the party, upon which he has no day in court, no opportunity to plead and offer proof, and have a judicial decision of the question of his liability."   *Preston* v. *Boston*, 12 Pick. 7, 14.   The legislature may authorize an assessment to be made without trial or notice. But the doctrine of the necessity of a judicial remedy for the correc-

tion of a wrong has been applied to illegal assessments made without notice. An excessive and unequal tax is illegal. Compelling one to bear $10 more than his share of the public expense, is, in law, as great a wrong as exacting a tax of $10 from another to whom no share of that expense belongs. And it is not apparent how any one can be compelled to pay a sum alleged to be due from him as his share of the common burden, without an opportunity, before or after the assessment, in an appeal or other proceeding, to be heard by some legally competent tribunal on the judicial questions of his liability and the amount of it. Cooley Taxation 298. Without such an opportunity, and without a judicial remedy for illegal taxation, there would be a power of arbitrary and unequal assessment. Taxes have not been generally regarded as ordinary debts. Cooley Taxation 13. But as the price paid for the protection which the payers are entitled to receive from a government constitutionally declared to be formed by the mutual contract of the people, taxes are, in a certain constitutional sense, debts created by contract. Theoretically and practically, they are much like premiums due from the members of a mutual insurance company. For various legal purposes they are debts. In the absence of an exclusive statutory method of collecting them, they are collectible by suit at common law. Cooley Taxation 300. The questions of liability and amount are questions of indebtedness, and are of a judicial nature. The decision of those questions, upon existing law, with or without notice, is essentially an exercise of a judicial faculty. And when they are decided after notice and an opportunity for both parties to be heard, and with a power of carrying the decision into execution, the proceeding is not constitutionally excluded from the judicial jurisdiction.

The appellant is plaintiff. The town is appellee, entitled to notice,—is defendant of record, and defendant in interest (with some exceptions, as in cases of school-district taxes); and there is, or may be, a judgment for costs, as in other suits. If the appellant's entire tax is abated, the assessment of it may be vacated as effectually as an erroneous decree or judgment can be reversed on appeal or writ of error. If a part of the tax is abated, the assessment, like a probate decree, modified on appeal (Gen. St., c. 188, s. 12), remains in force so far as it is unaltered. If the appellant has paid the tax, and a part or the whole of it is abated, an execution in the nature of a writ of restitution (*Aldrich* v. *Wright*, 57 N. H. 104) is issued upon the judgment of abatement, as an appropriate method of enforcing it.

The appeal is an equitable proceeding (*Perry's Petition*, 16 N. H. 44, 48; *Cocheco Mfg. Co.* v. *Strafford*, 51 N. H. 455, 469), is entered on the equity docket, and is tried as an equity case, with the despatch and economy of the reformed equity procedure. While the misapplication of municipal funds may be prevented by injunction, a bill in equity for a perpetual injunction against the collection of an illegal tax cannot ordinarily be maintained, because there is other adequate remedy. *Brown* v. *Concord*, 56 N. H. 375, 383. In many cases, the

other adequate remedy is an appeal in which such orders, prohibitory or mandatory, conditional or absolute, temporary or perpetual, are made, during the progress of the appeal, as justice requires.   Justice may require an order operating like, or in effect equivalent to, an injunction, a mandamus, a certiorari, a supersedeas, a restitution of property, an amendment, reformation, reversal or confirmation of the assessment, an abatement of the tax, or a dismissal of the appeal. Whether any such order be called an order, or something else more or less comprehensive than the name given it by the legislature, its operation can be confined within no narrower bounds than those of justice.   The effect of a judgment of abatement is such that a perpetual injunction can seldom be necessary.   And the embarrassment of public business, by a temporary injunction issued against the collection of the tax before the appeal is decided, is to be considered on the question whether justice requires such an injunction.   Generally the execution in the nature of a writ of restitution, issued upon a judgment of abatement, is a sufficient remedy.   But an appellant, threatened with a very injurious distress of his property, or with arrest and imprisonment, for an apparently excessive or wholly wrongful tax which he is unable to pay, or which he cannot pay without unreasonable expense or inconvenience, or which, if paid, cannot be recovered on account of the insolvency of the appellee, may be able to show that justice requires a preliminary order suspending the collection of a part or the whole of the tax until his appeal is tried.   And this being shown, the court has no more authority to refuse to make such an order, than to refuse to make any other order required by the justice of the case.

However erroneous, in law or in fact, the assessment may be, the appeal being an equitable proceeding, and the appellant, seeking equity, being required to do equity, only so much of his tax is abated as in equity he ought not to pay.   *Perry's Petition*, 16 N. H. 44, 48.   This is necessarily so because the statute commands such order to be made as justice requires; and justice requires such an order as will not relieve the appellant from bearing his share of the common burden of taxation on account of any error in the process of finding the amount of his share, and setting it down, with his neighbors' shares, on a town book.   In the federal jurisdiction, the rule that he who seeks equity must do equity is construed to require the payment of such part of a tax as ought to be paid, before equitable relief is asked against the rest.   *Taylor* v. *Secor*, 92 U. S. 575, 616.   In all legal proceedings, good in part and bad in part, the law corrects that which is erroneous and preserves that which is good, when this course is practicable. *Lisbon* v. *Lyman*, 49 N. H. 553, 582, 586.   An assessment of a tax is a legal proceeding as much entitled to the benefit of this rule as a verdict, judgment, or award of arbitrators.   *Lincoln* v. *Worcester*, 8 Cush. 55, 58.   If, in this case, the court-house tax were unconstitutional, the entire assessment made by the defendants would not on that account be void;   and if any part of the plaintiff's tax were for

any cause illegal, the whole assessment of his tax would not, for that reason, be a nullity.

The equitable rule in tax cases rests on a ground more fundamental than an equitable form of action, or a statutory provision for such an order as justice requires. The plaintiff holds his common-law rights of property and personal liberty subject to a constitutional liability to contribute his share of the expenses of government. So much of his share as he escapes the payment of, his neighbors are compelled to pay for him. So much of his obligation as he avoids, he casts upon them. His payment of his share is as much their constitutional right as it is his constitutional duty. His non-performance of his duty is a violation of their right. It is the theory of the constitution, that government originates from the people, is founded in consent, and created by a mutual contract. Bill of Rights, Art. 1; Part 2, Art. 1. By their original contract, the people assume the expense of the common benefits of the government established by the contract. Bill of Rights, Art. 12. The statutory mode of collecting the money is held to be exclusive. *Hibbard* v. *Clark*, 56 N. H. 155; Smith (N. H.) 522; Cooley Taxation 13, 300. But a duty expressly declared by the bill of rights as one accepted in an indispensable stipulation of the social compact, must be regarded as of the strongest obligation, and based on first principles. If the theory of our government is sound, an effort to evade the payment of one's share of the public expense is an effort of one of a company of joint purchasers to make his associates pay his share of the price of something bought, owned, and enjoyed by him and them in common. The success of such an effort must be a fraud in law as well as in fact, unless the legislature have the power, and exercise the power, to legalize it. The statutes of taxation direct when, how, and by what common agents each one's share of the public expense is ascertained, when it is due, to what common agent it is payable, and in what manner the constitutional obligation to pay it may be enforced. In the process of ascertaining each one's share, called an assessment, selectmen, unlearned and unskilful in law, or unable to forecast the decision by court and jury of numerous questions of law and fact, take a course which, in many particulars of omission and commission, a court and jury think is erroneous. This must happen frequently. It would be extraordinary if selectmen should so make the annual assessment that its form and substance, and the manner of making it, in every respect of law and fact, would, in the opinion of other tribunals, be perfect. "No prudent man would act in the office of selectman where he must act in every case at his peril; where he must not only judge right on every question of law, but where his judgment must coincide with judges and jurors examining the same point years afterwards." *Harris* v. *Willard*, Smith (N. H.) 63, 71. It is highly improbable that the legislature would consider a defect in the assessment of a man's share a reason for giving him authority to violate the constitutional rights of his neighbors by putting upon them the performance of his constitutional duty.

Scarcely anything but an express enactment conferring such authority could justify the court in imputing to the legislature an intention to sanction such a wrong. Upon every rule of construction, every implication of fact, and every intendment of law, applicable to the subject, the statutes leave the constitutional duty where the constitution left it, notwithstanding any errors of law or fact in the selectmen's apportionment of the duty. The errors may be corrected : the duty remains, and its performance may, in some way, be enforced.

Recognizing the paramount character of the tax obligation, the legislature have plainly expressed their purpose that errors of assessment may be corrected, and that the obligation of each person assessed shall remain unimpaired. They have given a cheap and expeditious appeal, in which, upon a full trial and judicial decision of all questions of law and fact involved in the assessment, such order must be made as justice requires. Justice requires an order that will not subject the appellant to more, or less, than his share of the common burden. More than his share may be set down to him upon an appraisal of his farm at its value, and of his neighbors' farms at less than their value. This error is corrected on appeal by reducing the amount of his tax so that he shall bear no more than his proportion. *Manchester Mills* v. *Manchester*, 57 N. H. 309—58 N. H. 38; *Chicopee* v. *County Commissioners*, 16 Gray 38.

If A owns two houses of equal value, and the selectmen appraise at its value all property except A's two houses, which are appraised, one at $500 less and the other at $500 more than its value, an abatement of the tax assessed on the overvaluation of the latter would be an exemption of $500 worth of his property, and to that extent a release of his tax obligation. Our decision, in *Dewey* v. *Stratford*, 42 N. H. 282, 289, that an abatement should be made in such a case, cannot be sustained. It is in conflict with the principle of the cases in which the appraisal of the appellant's real estate is compared with the appraisal of other real estate, for the purpose of ascertaining his proportion of the common burden. *Manchester Mills* v. *Manchester*. His proportion is the object of inquiry; and it is not ascertained by the rule laid down in *Dewey* v. *Stratford*. In that case, and in *Lowell* v. *County Commissioners*, 3 Allen 546, 549, it was held that the tax assessed on an overvaluation of one of two items of the appellant's property must be abated, notwithstanding an equal undervaluation of the other item, because the appellate tribunal had no power to make a new assessment, and increase the tax on the undervalued item. We need not now inquire whether the appellant's aggregate tax can be increased. When the law directs such order to be made as justice requires, and justice requires an order dismissing the appeal, or abating only the excess above the appellant's proportion, the court making such order need not make a new assessment, nor increase the tax on an undervalued item. Justice does not require the correction of errors of valuation whose joint effect is not injurious to the appellant. So far as such errors neutralize each other, the case is governed by

the general rule, that, on a writ of error or other remedial process, a party cannot rely on anything as cause of reversal which is no disadvantage to him.  Bac. Ab., Error (K) 4 ;  Shirley v. Lunenburg, 11 Mass. 379, 383 ;  Dred Scott v. Sandford, 19 How. 393, 566 ; McKean v. Cutler, 48 N. H. 370, 375 ;  Darling v. Westmoreland, 52 N. H. 401, 407.

In Dewey v. Stratford, we said if selectmen err in their appraisal it is their own fault, and they are entitled to no favor on that account ; they should not be allowed to offset one error of judgment against another error of the same amount on the opposite side ; a different rule would encourage selectmen in a course of inattention and carelessness, for which there can be no good cause and should be no excuse ; and for their integrity and competency the law holds the town responsible.  In this view of taxation there is a radical mistake.  The question, on appeal, is, not whether the selectmen are in fault, whether they shall be favored or punished, whether the town is responsible for error in the assessment, or whether official carelessness should be encouraged, but whether a share of a common burden belongs to the appellant, and whether more than his share has been allotted to him.  By New Hampshire law, taxation is not extortion practised upon the people by an oppressor whom they circumvent by artifice, and an astute application of technical rules to his methods of procedure.  It is a division among themselves of the expense of their own government of themselves,—a division made by themselves through their own agents, in pursuance of their original contract.  Booth v. Woodbury, 32 Conn. 118, 130.  The right of an appellant to throw any part of his share upon the rest of the community who bear their own shares is not supported by any error of the selectmen, and is inconsistent with the general theory of taxation as well as the special provision for such an order as justice requires.

As it does not appear that the plaintiff was injured by the refusal of the defendants to set down in separate columns of their invoice the value of different classes of his property (Gen. Stat., c. 52, s. 3), their refusal is not shown to be a legal cause of complaint in this or any other proceeding.  If a tax-payer is entitled to such a separate appraisal, and it is necessary, or would be useful to him for some purpose contemplated by law, it can be made by the court, or by the selectmen acting under such order as justice requires on appeal, or by the selectmen acting under a mandamus without an appeal.  He has an adequate remedy of specific performance of their duty : their refusal to do their duty at his request is not a reason for transferring all or any part of his burden to his neighbors : and the failure of selectmen, acting in good faith, to perform their duty, is not a sufficient reason for transferring his burden to them.  The plaintiff's contention is, that, although it was the defendant's duty to assign him his share of the common burden, their assignment of his share is wholly void, and they are liable to pay all they assigned him because it was not set down in due form, and because parts of it are unconstitutional and

otherwise illegal. Between the errors he asserts and the relief he asks, there is no logical or legal proportion or connection. If this action could be maintained on the ground on which he puts it, he would have, for his alleged grievances, a redress unsuitable in kind and excessive in amount.

One cannot be illegally deprived of his property, personal liberty, or any legal right, to his substantial damage, without a legal remedy. If the plaintiff has a right, he must of necessity have a means to vindicate and maintain it, and a remedy if he is injured in the exercise or enjoyment of it; and, indeed, it is a vain thing to imagine a right without a remedy. Want of right and want of remedy are reciprocal. HOLT, C. J., in *Ashby* v. *White*, Ld. Raym. 938, 953. That only is a legal right which is capable of being legally defended; and that is no legal right, the enjoyment of which the law permits any one with impunity to hinder or prevent. It is a legal paradox to say that one has a legal right to something, and yet that to deprive him of it is not a legal wrong. When the law thus declines to interfere between the claimant and his disturber, and stands, as it were, neutral between them, it is manifest that, in respect to the matter involved, no claim to legal rights can be advanced. Cooley on Torts 20. The necessity of a legal remedy for the infringement of a legal right has given rise to causes of action against public officers, who in some instances incur great risks, and are held liable for illegal proceedings without any actual fault on their part. In *Hussey* v. *Davis*, 58 N. H. 317, Davis, a deputy sheriff, suffered apparent injustice for serving a search-warrant, the insufficiency of which he could not be expected to understand. Hussey was entitled to a remedy for the illegal search of his house. The reasons for legal severity in such a case do not operate in favor of this plaintiff, to whom the law has given the perfect remedy that justice requires.

In *Lincoln* v. *Hapgood & a.*, 11 Mass. 350, 355, a judgment was rendered against selectmen for rejecting the plaintiff's vote, upon a legal opinion honestly entertained by them, but held by the court to be erroneous. The judgment was rendered on the ground that if the plaintiff could maintain no action against them without proof of an ill design, he would be entirely shut out from a judicial investigation of his right. That case was examined in *Wheeler* v. *Patterson*, 1 N. H. 88, where this court came to the conclusion that the want of other remedy for the plaintiff is not a sufficient reason for giving him an action against the selectmen or moderator acting without malice. And this is the prevailing doctrine. Cooley on Torts 414, 415. In *Turnpike* v. *Champney & a.*, 2 N. H. 199, 201, it is held that selectmen would be liable for laying out a highway round the plaintiff's turnpike gate merely for the purpose (disclosed in the petition) of enabling travellers to evade the payment of toll. It seems to be assumed, in the decision, that such a purpose would not be entertained in good faith. RICHARDSON, C. J., delivering the opinion, says,— "They seem to stand in the situation of a moderator of a town-meet-

ing, who is unquestionably answerable for maliciously rejecting the vote of one who has a right to vote. If selectmen should lay out a road round a turnpike gate merely for the purpose of enabling travellers to evade the payment of toll, it is impossible to doubt that an action might be maintained for the injury; for the law affords no other remedy for the injury." The decision, thus put on the ground of a want of other remedy, is not an authority for the plaintiff in this case; and, so far as the ground of such a decision is material, it is an authority for the defendants. As the plaintiff would have an adequate remedy by appeal if he and his property were not liable to taxation in Newport, the decision of the second question raised in *Preston* v. *Boston*, 12 Pick. 7, and other similar decisions under statutes construed to give inadequate remedies on appeal, have no authority under the statute now in force in this state. In *Hayden* v. *Foster*, 13 Pick. 492, 496–499, a tax title of a tract of land was held void because that tract was liable only for the tax assessed upon it, and was sold for taxes assessed on it and other distinct tracts, and the whole of the owner's real and personal estate. "The decision in that case," says BIGELOW, J., in *Howe* v. *Boston*, 7 Cush. 273, 276, "was grounded on the highest principles of equity, and justified by the necessity of affording to an innocent party the only remedy which the law could give him "

*State* v. *Thompson*, 2 N. H. 236, was a rule upon the defendant to show cause why a *certiorari* should not issue for the purpose of quashing an order of the common pleas abating a tax assessed upon property he did not own. A *certiorari* was issued, because it was held that the statute then in force gave the common pleas no authority to remedy by abatement the injury of which he complained. "He is not," say the court, "without remedy. If he has been improperly taxed for property he does not possess, he can, without doubt, obtain redress by action." In *Walker* v. *Cochran*, 8 N. H. 166, 169–171, it seems to be taken for granted that selectmen are not liable for an illegal assessment when there is a remedy by appeal. "Perhaps the decisions holding selectmen responsible, where the proceedings of the town had been erroneous, were supposed to be necessary in order to give a party, of whom an unlawful tax had been collected, a sufficient remedy where there was no provision by statute giving an action against the town." PARKER, C. J., in *Henry* v. *Sargeant*, 13 N. H. 321, 339.

Other authorities directly support the proposition, that an appeal is the plaintiff's only remedy for an error that can be corrected on appeal. *Little* v. *Greenleaf*, 7 Mass. 236, 240; *Osborn* v. *Danvers*, 6 Pick. 98; *Boston Water-Power Co.* v. *Boston*, 9 Met. 199, 204, 205; *Bates* v. *Boston*, 5 Cush. 93, 97; *Howe* v. *Boston*, 7 Cush. 273, 274, 277; *Lincoln* v. *Worcester*, 8 Cush. 55, 61, 62; *Wright* v. *Boston*, 9 Cush. 233, 242; *Bourne* v. *Boston*, 2 Gray 494, 496; *Salmond* v. *Hanover*, 13 Allen 119; *Chapel* v. *Boston*, 120 Mass. 212, 214; *Davis* v. *Macy*, 124 Mass. 193, 196; *Stickney* v. *Bangor*, 30 Me. 404; *Gilpatrick* v. *Saco*, 57 Me. 277; *Waite* v. *Princeton*, 66 Me. 225; *Wharton* v. *Birmingham*, 37 Pa. 371; *Williams* v. *Holden*, 4 Wend. 223, 228.

In *Osborn* v. *Danvers*, 6 Pick. 98, 99, the court say,—"His only remedy is by application for an abatement; for when a new right is created by statute, which at the same time provides a remedy for any infringement of it, that remedy must be pursued." And in *Briggs's Petition*, 29 N. H. 547, 551, the court, citing *Osborn* v. *Danvers*, say, —"The principle, that where a statute gives a right, and at the same time provides a remedy, that remedy must be pursued, and any other is excluded, is well founded in reason and well settled by authority. The proceeding provided for the abatement of taxes would, of course, exclude any other remedy for such abatement if any other existed." But this may be a misapplication of the rule of construction. The warrant issued by the defendants ran against the plaintiff's person and property. He paid the tax under duress, to prevent the seizure of his person or property on the warrant. His rights of property and personal liberty are common-law rights, not created by the tax law or any other statute. The rule is, that when a new right is created by a statute which provides a method in which the right may be enforced, the method thus provided is the only one which can be pursued; but when a statute merely gives a new remedy for enforcing a common-law right, such new remedy is not exclusive, but cumulative, unless the common-law remedy is expressly or impliedly abolished. *Pollock* v. *Eastern R. R.*, 124 Mass. 158; Cooley on Torts, 651, 652; Sedgwick Stat. & Const. Law 75, 341. It would seem that the statute of tax abatement gives the plaintiff not a new right, but a new remedy, and that his common-law remedy remains unless it is taken away by statute.

The question whether the common-law remedy is repealed is a question of statutory construction, which is a question of the intention of the legislature, which is a question of fact (Sedgwick's Construction Stat. and Const. Law 193, 2d ed.), and is determined, like the construction of a will *(Rice* v. *Society*, 56 N. H. 191, 197, 198, 203; *Brown* v. *Bartlett*, 58 N. H. 511; *Morrall* v. *Sutton*, 1 Phillips 533), bond *(Houghton* v. *Pattee*, 58 N. H. 326), or mortgage *(Morse* v. *Morse*, 58 N. H. 391), by the natural weight of competent evidence, and not by an arbitrary formula. Legal rules of construction, so called, suggest natural methods of finding and weighing the evidence, and ascertaining the fact of intention *(Rex* v. *P. L. Commissioners*, 6 A. & E. 1, 7), but do not determine the weight which the evidence has in the mind, and do not establish a conclusion at variance with that reached by a due consideration of all the competent proof. The court have no more authority to make a rule of construction that defeats a legislative purpose shown by the evidence, than to defeat that purpose without a rule. The rule in favor of a cumulation of remedy is subject to qualifications and exceptions; and, taken with them, it signifies that, in the absence of satisfactory evidence of a legislative purpose to make a new remedy a substitute for an old one, the latter is not repealed. The statute is not held to mean what the evidence does not show the legislature meant. It is not a repeal when it does not appear that the legislature designed a repeal.

"The real intention, when accurately ascertained, will always prevail over the literal sense of terms. \* \* \* When the words are not explicit, the intention is to be collected from the context, from the occasion and necessity of the law, from the mischief felt, and the objects and the remedy in view; and the intention is to be taken or presumed, according to what is consonant to reason and good discretion. These rules, by which the sages of the law, according to Plowden, have ever been guided in seeking for the intention of the legislature, are maxims of sound interpretation, which have been accumulated by the experience and ratified by the approbation of all ages. \* \* \* Four things are to be considered : what was the common law before the act; what was the mischief against which the common law did not provide; what remedy the Parliament had provided to cure the defect; and the true reason of the remedy. It was held to be the duty of the judges to make such a construction as should repress the mischief and advance the remedy." 1 Kent's Com. 462, 464.

On the question of fact whether the legislature intended to repeal the common-law remedy of an action for damages in such cases as this, there is evidence besides that which we have thus far considered. By the common law, when a person not liable to taxation is called on to pay a tax assessed by the selectmen, and can save himself or his property in no other way than by paying the illegal demand, he may recover it back from the town as money had and received by the town, and obtained from him by duress. *Preston* v. *Boston,* 12 Pick. 7, 14; Cooley on Taxation 565–572 ; Burroughs on Taxation 440. The presumption of payment after twenty years is a common-law limitation of the time within which his remedy against the town is available. By the statute applicable to actions of assumpsit, his time is further limited to six years. In this state of the law, it is enacted that if any person is delinquent in the exhibition of an account, the selectmen shall set down to him, by way of doomage, as much as they judge equitable, which shall be conclusive in all cases unless he shows his inability to exhibit an account; that the selectmen may abate any taxes assessed by them or their predecessors; and that any person aggrieved by the neglect or refusal of the selectmen to abate a tax, not being delinquent in the exhibition of an account, within nine months after notice of the tax, and not afterward, may appeal to the court, who shall make such order as justice requires. Rev. St., *c.* 41, *s.* 5 ; *c.* 44 ; Gen. St., *c.* 51, *s.* 5 ; *c.* 53, *ss.* 10, 11.

The former provision, that the delinquent should have no appeal, did not defeat its object by leaving him in possession of a common-law remedy for an error correctible on appeal. And the present law, making his assessment conclusive, is not less efficient than the former. A resident of whom an account is demanded by the selectmen, may, at his option, decline to give it, and leave them to assess him without it ; but if he does so, he submits himself to their assessment, and waives all the objections which he could raise if he gave in an account. He requests the doom, and accepts it as the correct ascertainment of his

share of the common burden. He may find an advantage in this, because the selectmen may know little or nothing of the amount of his tax obligation, and his share may be more than they guess. The statute is based on the equitable consideration that he shall not take this chance, and afterwards, if it is unfavorable, resist the assessment. The exhibition of an account, when he is able to exhibit it, is made a condition precedent, without which he cannot have the remedy provided for him. *Lincoln* v. *Worcester*, 8 Cush. 55, 63, 64. If he intends to enter upon a litigation, he must prepare himself by taking the prerequisite measures prescribed by law. *Win. Company* v. *Chelsea*, 6 Cush. 477, 481. The conclusion in *Osgood* v. *Blake*, 21 N. H. 550, 566, that the delinquent has an action against the selectmen because he has no other remedy, is not the true construction of the statute. The legislature intended there should be no remedy in trespass or case for him who withholds an account. If he can maintain an action at common law against the selectmen or the town for damages, his doomage is not conclusive, as the statute says it shall be. The principle that requires a legal remedy for the infringement of every legal right, gives him no action, because he has elected to make no disclosure and to abide by an assessment made without it, relying for remedy on the selectmen's power of abatement. The purpose of the legislature would be frustrated by the survival of a common-law action for damages in his favor against the selectmen or the town. Whether, in any case of mistake, fraud, or other ground of chancery power, he can have relief under the statute of equity jurisdiction, we need not now inquire.

The appeal of one who is not delinquent in the exhibition of an account must be brought within nine months after notice of taxation; and, on his appeal, such order must be made as justice requires. The limitation of the time, the equitable limitation of the nature of the remedy, and the public and private mischiefs intended to be suppressed by these limitations, show there is no other remedy against the town for any error correctible on appeal. The old remedies, available six years, are not increased by the addition of the new remedy available less than one year. The old remedies by which, for technical reasons, a person could throw a part or the whole of his constitutional burden upon his neighbors, is not supplemented by the new remedy leaving his burden where it equitably and constitutionally belongs. Selectmen, if liable for taxes compulsorily paid to the town, would have no remedy against the town (*Wadsworth* v. *Henniker*, 35 N. H. 189), and could have none without indirectly destroying the exclusive character of the statutory method of correcting an erroneous assessment. The legislature, providing for all persons assessed a remedy to be claimed within nine months after notice of the assessment and not afterward, did not intend to leave selectmen exposed to the danger of unjust and unnecessary ruin, upon a liability to pay all the taxes they assess,—a liability enforceable years after the taxes are collected. Providing a just remedy, precisely conformed to the constitutional theory of taxation, they intended it should be a substitute for remedies

that worked injustice, and nullified the constitutional obligation. The contrary doctrine of *Osgood* v. *Blake*, 21 N. H. 550, 567, and other similar cases, was adopted without due consideration of the evidence of the legislative intention. Upon all the evidence, affirmative and negative, our conclusion is, that for any error of law or fact in the assessment, for which a person is entitled to relief, he has a remedy, by appeal, mandamus, or other direct proceeding, aimed at the correction or reversal of the assessment; and that, for such an error, he cannot maintain an action for damages against assessors who acted in good faith.

If selectmen are liable for assessing a tax in pursuance of an unconstitutional statute of tax-assessment or tax-exemption, they act upon every tax law at their peril. If they must act at their peril, they must decide the question of constitutionality upon which their safety depends. The result would be more than two hundred boards of municipal assessors unnecessarily holding annual courts for examining and deciding constitutional questions of taxation, and unnecessarily required to decide doubtful cases under a fear of serious personal consequences of litigation, practically equivalent to duress, and producing the pressure of a strong personal interest in their own decisions. A judicature under such disqualifying intimidation and interest, is inconsistent with common-law principles, with reference to which statutes are construed. The inappropriateness of the fear and pressure, in a service requiring impartiality and independence, is evidence of the legislative intention.

Conflicting decisions would be made in different towns, and in different years in the same town. There would be inequality, irregularity, and confusion. If the legislature had expressly established such a jurisdiction, there would be an inherent improbability that they intended the judges, upon whom they imposed the duty of exercising it, should be liable for entertaining opinions afterwards held by other judges to be erroneous, on the constitutional questions submitted to them, or on any jurisdictional questions of law or fact, when a direct appeal had been provided for correcting constitutional and jurisdictional as well as other errors, by such orders as justice required. In *N. Bank* v. *Elmira*, 53 N. Y. 49, 58, it is said that when a decision of the highest court of a state, on a federal question, has been reversed by the federal court, the state court would not be likely to hold a subordinate officer culpable for acting in accordance with its own decision. The legislature, undertaking to make it the duty of selectmen to assess a certain tax with or without certain exemptions, would not be likely to unnecessarily expose them to a liability to pay the whole tax themselves, or to pay any damages for assessing it in obedience to the command which the legislature believed themselves authorized to give. The special provision of other adequate remedy on appeal, and the public and private consequences of its being a mere cumulation of remedy, manifest the legislative purpose that assessors should not be liable for concurring with the legislature on a constitutional question

of legislative power, and should not be unnecessarily compelled to decide it at their peril. If it were the intention of the law-making power, in passing a tax act or an exemption act, to submit the judicial question of its constitutionality to every board of assessors for preliminary decision, and to require each board to suspend the operation of the act in their municipality when they did not concur with the legislature on that question, it is probable that such a design would be clearly expressed. And in the absence of satisfactory evidence of a legislative intention that assessors should decide, at their peril, the judicial question of the legality of a vote of a town purporting to authorize taxation or tax exemption, such an intention cannot be established on an unreasonable conjecture. Assessors are not liable for making an assessment in pursuance of an unconstitutional act of the legislature, or an illegal vote of the town; and the validity of such acts and votes in this case is immaterial.

Bad faith is not alleged in the declaration, nor found by the referee. The question of assessors' liability upon allegations and proof of fraud or malice, and special damage, we are not now called upon to consider. Many questions of law and fact, decided in tax appeals, are previously decided by assessors. Appeals are generally taken for the purpose of obtaining a decision by the appellate tribunal of questions decided (many of them necessarily decided) by assessors. Some of these questions are first determined by the legislature. That any of them, being judicial questions when reviewed by court, referee, or jury, on appeal, are not judicial when decided by assessors before appeal; that assessors, deciding them, do not act in a judicial capacity, and are subject to a rule of liability for damages that is not applicable to jurors, referees, and other judges, resolving judicial questions, and legislators passing upon legislative questions; that the liability of a tribunal determining the existence and amount of a tax debt or other debt depends upon the circumstance that the warrant, execution, or other process of collection is issued by that tribunal and not by some other officer; that the assessment of the railroad tax heretofore by the court has been a judicial act, and its assessment hereafter by the board of equalization will not be a judicial act,—are propositions of which we express no opinion.

*Judgment for the defendants.*

ALLEN, J., did not sit: the others concurred.