Grafton, }
April 6, 1909. }

## STATE *v.* ROLFE.

Statutes relating to fishing in particular ponds or streams and those giving fishing privileges to particular persons are a part of the general law of the state.

Section 10, chapter 251, General Statutes, which among other things restricted the right of fishery in Profile lake, was repealed by its omission from the general revision of the laws relating to fish and game, in 1878.

APPEAL, from a sentence imposed by a police court upon a complaint charging the defendant with fishing in Profile lake in Franconia. Transferred from the September term, 1908, of the superior court by *Pike*, J., upon an agreed statement of facts.

*Samuel C. Eastman, Batchellor & Mitchell, Marshall D. Cobleigh,* solicitor, and *Smith & Smith (Mr. Eastman* and *Edgar W. Smith* orally), for the state.

*George W. Pike* (orally and by brief), for the defendant.

PEASLEE, J. One defence set up is that the statute under which the prosecution is brought (G. S., *c.* 251, *s.* 10), has been

repealed. The state says it is not repealed because it was not revised in 1878 and because it is an act of local application. To satisfactorily dispose of this issue it seems advisable to examine the history of legislation touching the right of fishing in this state.

From the time of the earliest enactment upon the subject until after the revision of 1878, laws regulating the right to fish were treated as public and general. Acts relating to fishing in certain streams, or at certain times, were all published as a part of the body of public law. Until 1864, the direct or indirect grant of special privileges of fishery seems to have been attempted but once. In 1798, the act prohibiting the use of seines in the Merrimack was so far suspended that the proprietors of the Paddy seine and the Pumpkin seine had leave to draw their seines in the customary way and manner, but not within two rods of the confluence of Natticook brook with the Merrimack river. Laws 1798, *p.* 527. In the revision of the fish laws in 1811, this act was included with the rest. Act of June 20, 1811; Laws, *ed.* 1815, *p.* 446.

In the compilation of 1815, the editor (Chief Justice *Jeremiah Smith*) defines what are and what are not general laws. "This edition comprehends in the body of the work all the general and publick statutes now in force. . . . Acts respecting turnpike roads—laying out or establishing particular highways—granting to particular towns the power of taxing their lands for repairing roads—incorporating towns, academies, religious societies, &c.—altering the times of holding annual meetings—creating corporations, such as banks, insurance companies, library associations, &c.—respecting particular bridges, canals, ferries, lotteries, &c.—granting to particular persons license to sell lands, to review actions, &c., &c., are not published in this edition, as they do not regard the whole community; but are special, operating on particular persons or private concerns." Advt. Laws, *ed.* 1815.

The acts governing fishing in various lakes, ponds, and streams then numbered ten. They are all printed as part of the "general and publick statutes." Laws, *ed.* 1815, *pp.* 442–450. By 1830, the number of these acts had largely increased. In the compilation of that year the "Preservation of Fish" was made a separate title. Its thirty-four chapters consist entirely of acts relating to waters specified by name or local description, and it includes all acts relating to the subject which had not theretofore been repealed. Judges *Richardson* and *Bell* evidently understood that such acts were parts of "the general and public statutes." Advt. Laws, *ed.* 1830.

This was the flood-tide of piscatorial legislation in that generation. The following year all but two of the acts were repealed,

except so far as they related to fishing with a seine. Laws 1831, c. 27. The commissioners of 1842 reported these provisions against seining as they were left by the act of 1831, and added a section prohibiting the use of a seine in any other waters of the state. Comm'rs' Rep. R. S., c. 128. The legislators were still unfavorable to such restrictions. The proposed chapter was stricken out, and each act regulating fishing was specifically repealed. R. S., c. 230, s. 13. In 1850, the tide began to set again in favor of regulation. Fish in artificial ponds were protected (Laws 1850, c. 970), and from that time on various acts were passed.

In 1864 it was enacted as follows: " Section 1. That all persons be and hereby are prohibited from fishing in any manner in Profile lake, Franconia Notch, or its tributaries, including the small pond on the opposite side of the road; and any person violating the provisions of this act shall be liable to a fine of ten dollars, one half of which shall be paid to the person prosecuting and one half to the use of the state. Sec. 2. Nothing in this act shall be construed to prevent the owner of the land surrounding said pond from establishing therein the cultivation of trout, and taking the product thereof in any manner most convenient." Laws 1864, c. 4035.

The attempt to create special privileges was evidently thought worthy of emulation. Similar acts were passed as to Glen pond (Laws 1865, c. 4096) and the upper waters of the Lower Ammonusuc (Laws 1866, c. 4229). In the revision of 1867 these three acts were consolidated and made a part of the chapter on offences against game laws. G. S., c. 251, s. 10. Not only were these acts made a part of the general and public laws, but others of even more limited application were so treated, e. g., the act forbidding fishing in Humphrey's pond for five years from July 12, 1864. Ib., s. 11. They ceased to be separate and distinct acts. They became a part of a general scheme of legislation. There was no separate penalty provided for each, but all depended upon one general provision for the punishment of offenders. Ib., s. 14. The original acts which were thus revised and reënacted were repealed in terms. G. S., c. 273, s. 14. The following year the provisions of the statute were extended so as to incude Echo lake. Laws 1868, c. 1, s. 66.

There were still others who desired the same arrangement as the proprietors of lands in Franconia Notch enjoyed, and later the provisions (G. S., c. 251, ss. 10, 14) were extended to Bartlett's pond in Bath (Laws 1869, c. 122; repealed, Laws 1874, c. 64) and to Lovewell's pond in Nashua. Laws 1872, c. 58. Similar acts were passed as to Hunkins pond in Sanbornton (Laws 1872, c. 57), Elisha Goodwin's pond in New Durham (Laws 1874, c. 90),

and Cobleigh's pond in Northumberland (Laws 1875, *c.* 16). In order that there should be no doubt that these statutes were a part of the general and public laws, it was enacted in 1868 that all the unrepealed sections of chapter 251 of the General Statutes "are hereby made a part of the general laws of this state." Laws 1868, *c.* 1, *s.* 68. Before the next revision several acts closing specified ponds to fishing for a term of years were passed; and in 1869 the present system of conserving the fish and game interests was adopted. Laws 1869, *c.* 45.

In the revision of 1878, the subject of Fish and Game was again made a separate title. It was prepared by the fish commissioners and a special committee appointed by the governor and council to confer with them (Laws 1877, *c.* 115), and was adopted, in substance, by the commissioners to revise the statutes. Comm'rs' Rep. G. L., *p.* iv. In this revision all the special acts relating to fishing are repealed by name. G. L., *c*, 291, *s.* 14. "All acts and parts of acts the subjects of which are revised and reënacted" are also repealed. *Ib.*, *s.* 3. It is argued that the "act relating to Profile lake was not referred to and, of course, was not revised, therefore it was not repealed." The "act relating to Profile lake" ceased to be a law in 1867. After that, two sections of the General Statutes were the only ones that could be relied upon. These fall within the strict letter of the repealing act. They pertained to a subject which was revised and reënacted. The commissioners had been especially instructed to "revise the fish and game laws of the state" (Laws 1877, *c.* 115), they declared in their introductory report that they had done so, and the text of their report bears out the assertion. To say that because in the revision of a subject they struck out one section of the old law, therefore that section was still law because its subject was not revised, is too tenuous an argument to demand extended consideration.

The effect of the omission of a provision from a revised statute was thoroughly understood by the commissioners. A short time before, Judge *Sargent* had said, in delivering the opinion of the court: "Whether that omission in the General Statutes was intentional or accidental, we do not know. But it is enough to know that this provision for a homestead as against heirs *is* omitted, no matter for what reason; and where some parts of a revised statute are omitted in the revision, they are not to be revived by construction, but are to be considered as annulled." *Spaulding's Appeal,* 52 N. H. 336, 340.

But it is further said that this section is saved by the provision that the repeal shall not apply to "any acts enacted for the benefit of particular localities, and which are not general in their application, unless the same are expressly repealed." G. L., *c.* 291, *s.* 3.

This provision was not inserted by the commissioners (Comm'rs' Rep. G. L., *c.* 285, *s.* 3), nor by the committee on revision of statutes (Report of Committee 25). It was added during the consideration of the measure and amendments by the house, upon motion of Judge *Sargent*, chairman of the commission and of the committee of the house. House Journal, 1878, *p.* 531.

It does not seem probable that this exception was intended to apply to a provision like the one under consideration. Laws relating to fishing in particular ponds and laws giving fishing privileges to particular persons had always been enacted and published as a part of the general law. From the earliest compilations until this proviso was adopted, in revisions, in compilations, and in session laws, these acts had always been classed with those that are general and public. This was true whether the acts were permanent or temporary, whether they related to all waters in the state or to a single body of water, and whether they made general restrictions or granted special privileges to certain individuals. There was no exception to the rule. As before stated, the "act" relating to Profile lake had been repealed and the provision had been incorporated with others admittedly general. The common penalty which applied to all these sections alike (Laws 1868, *c.* 1, *s.* 54) was repealed in terms. Every "act" touching the right to fish, whether relating to this particular pond or to any other, was expressly repealed. Save for this single instance, there is no omitted section of the existing general statutes to which the exception in the repealing statute could apply. It cannot be assumed that so indirect and doubtful a method was adopted to preserve this one section. The acts the legislators had in mind were rather of the classes enumerated by Judge *Smith* in 1815, and which he defines as acts that "do not regard the whole community; but are special, operating on particular persons or private concerns." Advt. Laws, *ed.* 1815. There is no suggestion to be found anywhere that the commissioners dropped this or any other section from the statute because they thought it did not properly belong with the body of the public law. Had they made any such departure from the settled practice, attention would certainly have been called to the action taken.

The language of the exception aptly described special statutes, complete in themselves. It does not describe isolated sections of the general law which are not complete acts. This section carries no penalty. By itself it is a mere fragment, incapable of any practical execution. Nor can it be held that the section providing a penalty is impliedly excepted so as to make section 10 effective. The exception in the repealing act does not apply to "acts expressly repealed by this chapter." The penalty for the violation of sec-

tion 10, chapter 251, of the General Statutes (s. 14), was repealed in 1868. Laws 1868, c. 1, s. 54. The new penalty imposed by the act of 1868 was "expressly repealed" by section 14, chapter 291, General Laws; and this repeal did not revive any repealed acts. Ib., s. 9.

If it is possible to hold that the penalty might be saved under the provisions of section 11, chapter 291, General Laws, which saves the application of repealed acts to acts not repealed if the latter acts refer to and adopt the repealed acts, there is no sufficient reason for so doing. It is doubtful if the language of section 11 will admit of a construction that could apply in this instance; and if it does, it has added one more obscure turn in a course already full of difficulty. Determining the legislative intent "by the natural weight of competent evidence, and not by an arbitrary formula" (Edes v. Boardman, 58 N. H. 580, 592), the conclusion is that section 10, chapter 251, of the General Statutes, was repealed in the revision of 1878. Had there been an intent to retain this penal statute as a part of the law of the state, such intent could, and probably would, have been expressed rather than concealed.

*Complaint quashed.*

All concurred.