Strafford
No. 97-647

NEW ENGLAND TELEPHONE AND TELEGRAPH COMPANY

v.

CITY OF ROCHESTER

August 6, 1999

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Jack B. Middleton* and *Scott H. Harris* on the brief, and *Mr. Middleton* orally), for the plaintiff.

*Jones, Wensley, Wirth & Azarian*, of Rochester (*Danford J. Wensley* on the brief and orally), for the defendant.

HORTON, J. The defendant, City of Rochester, appeals a decision of the Superior Court (*Fitzgerald*, J.) granting plaintiff New England Telephone and Telegraph Company's motion for summary judgment. We reverse and remand.

The plaintiff provides telecommunications services to the residents of the city of Rochester. The defendant issued the plaintiff licenses for the location of "poles, wires, cables and other similar equipment" on city-maintained highways. *See* RSA 231:161, I(b), IV (1993). Pursuant to RSA 231:163 (1993), which permits license alterations "whenever the public good requires," the Rochester City Manager and Commissioner of Public Works filed a petition with the city council in March 1996 to amend the plaintiff's pole licenses to require the plaintiff to pay property taxes.

The proposed license amendment provided that "[i]n accordance with . . . RSA 72:23, I(b) this license is granted to the licensee(s) subject to the condition that the licensee(s) . . . shall pay[] all properly assessed real and personal property taxes," and "[f]ailure of the licensee(s) to pay duly assessed personal and real taxes when due shall be cause to terminate this license." The amendment further provided that "in accordance with the requirements of RSA 72:73, I(b), the licensee(s) . . . shall be obligated to pay real and personal property taxes on structures or improvements added . . . pursuant to this license." RSA 72:23, I(b) (Supp. 1998) states:

> All leases and other agreements, the terms of which provide for the use or occupation by others of real or personal property owned by the state or a city, town, school district, or village district, entered into after July 1, 1979, shall provide for the payment of properly assessed real and personal property taxes by the party using or occupying said property no later than the due date. All such leases and agreements shall include a provision that "failure of the lessee to pay the duly assessed personal and real estate taxes when due shall be cause to terminate said lease or agreement by the lessor." All such leases and agreements entered into on or after January 1, 1994, shall clearly state the lessee's obligations regarding the payment of both current and potential real and personal property taxes, and shall also state whether the lessee has an obligation to pay real and personal property taxes on structures or improvements added by the lessee.

In August 1996, the mayor and city council granted the defendant's petition after concluding that the public good required the

licenses to be amended. The plaintiff appealed the decision to superior court, *see* RSA 231:166 (1993), and moved for summary judgment. The court held that (1) the plaintiff's licenses were not "leases [or] other agreements" within the meaning of RSA 72:23, I(b), and (2) the public good did not require the defendant to amend the plaintiff's licenses. The court granted the plaintiff's motion for summary judgment. This appeal followed.

"In reviewing a grant of summary judgment, we look at the affidavits and other evidence, and all inferences properly drawn therefrom, in the light most favorable to the non-moving party." *Del Norte, Inc. v. Provencher*, 142 N.H. 535, 537, 703 A.2d 890, 892 (1997). We will affirm the grant of summary judgment if the evidence reveals no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law. *N.E. Tel. & Tel. Co. v. City of Franklin*, 141 N.H. 449, 452, 685 A.2d 913, 916 (1996). "As no material fact is in dispute on appeal, we need only determine whether the [moving party] was entitled to judgment as a matter of law." *Del Norte, Inc.*, 142 N.H. at 537, 703 A.2d at 892. We review *de novo* the trial court's application of the law to the facts. *Id.*

■ We have already decided that the plaintiff's telecommunications equipment is not taxable as real estate. *See N.E. Tel. & Tel. Co.*, 141 N.H. at 452-56, 685 A.2d 916-18. We, therefore, address whether the defendant can require the plaintiff to pay real estate taxes on the land that the plaintiff uses pursuant to its pole licenses. The assessment and collection of taxes must be based on legislative authority. *King Ridge, Inc. v. Sutton*, 115 N.H. 294, 296, 340 A.2d 106, 108 (1975). We have implied that pole licenses may not be taxable as real estate because a license does not ordinarily constitute a property interest. *See N.E. Tel. & Tel. Co.*, 141 N.H. at 455-56, 685 A.2d at 918. The defendant, however, does not seek to tax the plaintiff's licenses. Rather, the defendant seeks to amend the plaintiff's pole licenses to require the plaintiff to pay property taxes on the land it is allowed to use and occupy under those licenses.

This allocation of the tax burden is mandated by statute. RSA 72:6 (1991) provides that all real estate shall be taxed unless otherwise provided. RSA 72:23 (Supp. 1998) exempts from taxation any real estate "owned by the state, cities, towns, school districts, and village districts *unless* [it] is used or occupied by [another] under a lease or other agreement the terms of which provide for the payment of properly assessed [taxes] by the party using or occupying said property." RSA 72:23, I(a) (emphasis added). All leases and other agreements executed after July 1, 1979, that permit private

parties to use or occupy public property must contain language (1) requiring the party using or occupying the property to pay properly assessed real estate taxes, and (2) stating that failure to pay duly assessed taxes constitutes sufficient cause to terminate the lease or agreement. *See* RSA 72:23, I(b).

The plaintiff argues that its licenses are not the product of an "agreement" and thus RSA 72:23 is inapplicable. We disagree. The plaintiff's licenses constitute "other agreements, the terms of which provide for the use or occupation by others of real or personal property owned by the state or a city, town, school district, or village district." RSA 72:23, I(b).

■ As the word "agreement" is not defined in RSA chapter 72, we give the term its plain and ordinary meaning. *See Catalano v. Town of Windham*, 133 N.H. 504, 511, 578 A.2d 858, 862 (1990). Among the ordinary meanings given "agreement" is a "harmonious understanding," or "the act of agreeing or coming to a mutual arrangement." WEBSTER'S THIRD NEW INTERNATIONAL DIC-TIONARY 43 (unabridged ed. 1961). The statutory scheme that permitted the plaintiff to request pole licenses represents the legislature's conditional willingness to allow the use of public property for telecommunications purposes. *See* RSA 231:159-:182 (1993). The defendant is required to impose certain conditions on licensees, *see* RSA 231:161, V, and is implicitly authorized to impose other conditions on licensees consistent with the public good, *cf.* RSA 231:161, IV (license shall be granted if public good requires), :163 (selectmen may revoke or change terms and conditions when public good requires). By conditionally granting requests for pole licenses consistent with the public good, *see* RSA 231:161, IV, the defendant effectuates the legislature's general purpose and is able to address issues of local concern. The plaintiff, in obtaining pole licenses from the defendant, presumably assumed the status of licensee aware of and willing to accept the conditions imposed by the defendant and the legislature. In this sense, the parties' licen-sor/licensee relationship is predicated on a mutual understanding and arrangement. The plaintiff's licenses thus represent agree-ments, in the usual sense of the term, to occupy and use public property. The terms of RSA 72:23, I(b) are applicable to the plaintiff's pole licenses.

The plaintiff next argues that the license amendments were not authorized by RSA 231:163 because they were not required by the public good. The plaintiff contends that only amendments concerned with public safety are in the public good. We again disagree. In *Appeal of Easton*, 125 N.H. 205, 212, 480 A.2d 88, 90-91 (1984), we

reiterated the rule that a measure or act is in the public good if it is not forbidden by law and is to be reasonably permitted under all of the circumstances. The disputed amendments necessarily satisfy this standard in that RSA 72:23, I(b) requires the defendant to implement them.

The plaintiff asserts that the amendments were forbidden by law because RSA 72:23 is an exemption provision that cannot be interpreted to create taxing authority. This position misconstrues the taxing scheme. RSA 72:6 provides the defendant with broad taxing power. RSA 72:23 creates an exemption from RSA 72:6, but excepts from its application the land the plaintiff utilizes and occupies pursuant to its pole licenses. Such land is therefore taxable through RSA 72:6. RSA 72:23, I(b) simply requires the defendant to shift the tax burden imposed by RSA 72:6 to the plaintiff by making tax liability a condition of the pole licenses.

We reverse the trial court's order insofar as it prohibits the defendant from amending the plaintiff's pole licenses to require the plaintiff, as a condition of licensure, to pay real estate taxes assessed on the land it uses and occupies thereunder.

*Reversed and remanded.*

BROCK, C.J., and JOHNSON, J., did not sit; the others concurred.