Strafford
No. 2003-572

VERIZON NEW ENGLAND, INC.

v.

CITY OF ROCHESTER

Argued: June 10, 2004
Opinion Issued: July 16, 2004

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Jack B. Middleton* and *Scott H. Harris* on the brief, and *Mr. Middleton* orally), for the plaintiff.

*Wensley, Wirth & Azarian, P.L.L.C.*, of Rochester (*Danford J. Wensley* on the brief and orally), for the defendant.

*Ransmeier & Spellman, P. C.*, of Concord (*Dom S. D'Ambruoso* and *John T. Alexander* on the brief), for the New Hampshire Telephone Association, as *amicus curiae*.

DUGGAN, J. The plaintiff, Verizon New England, Inc. (Verizon), appeals a decision of the Superior Court (*T. Nadeau*, J.) ruling that the defendant, City of Rochester (city), could impose a real estate tax on Verizon for its

use of the public ways. The city cross-appeals, arguing that the trial court's decision to grant Verizon's petitions for tax abatement in part was erroneous. We affirm in part, vacate in part, reverse in part and remand.

## I. Facts

This case is before us again after remand. *N.E. Tel. & Tel. Co. v. City of Rochester*, 144 N.H. 118 (1999) (*Rochester I*). We recite only a brief history of the facts necessary to decide this appeal.

Verizon provides telecommunications services to the residents of the city. *Id.* at 119. In accordance with RSA 231:161 (1993), Verizon obtained licenses from the city for the placement of its poles, wires, cables and other equipment on city-maintained highways. *Id.*

In March 1996, the city manager and the commissioner of public works petitioned the city council to amend Verizon's pole licenses to include language from RSA 72:23, I(b) (1991) (amended 1993, 1999, 2002), which would require Verizon to pay real estate taxes for its use of the public ways. *Id.* In August 1996, the mayor and the city council determined that the public good required the licenses to be amended and granted the petition. *Id.* at 119-20.

Verizon appealed the mayor and city council's decision to the superior court. *Id.* at 120. In June 1997, the court granted Verizon's motion for summary judgment and held that: (1) Verizon's licenses were not leases or other agreements within the meaning of RSA 72:23, I(b); and (2) the public good did not require the city to amend Verizon's licenses. *Id.* The city appealed.

On appeal, we reversed the trial court's decision. We held that Verizon's pole licenses constituted agreements to occupy and use public property and, therefore, the terms of RSA 72:23, I(b) were applicable. *Id.* at 121. We also held that the amendments were required by the public good. *Id.* at 122. Accordingly, we reversed the trial court's order insofar as it prohibited the city from amending Verizon's licenses and remanded for further proceedings. *Id.*

On remand, the trial court ruled that the city could lawfully amend Verizon's pole licenses to require Verizon to pay real estate taxes. However, the trial court also found that the city "failed to follow a recognized methodology in reaching its conclusions regarding the market value of Verizon's use of the land pursuant to its pole licenses." As a result, the court granted Verizon's petitions for abatement "to the extent that the [c]ity's tax bills ... must be reassessed based on an appropriate methodology." This appeal followed.

On appeal, Verizon argues that: (1) RSA 72:23, I(b) does not allow the city to tax Verizon's use of the public ways; (2) the city's proposed tax

unconstitutionally singles out Verizon; and (3) the city's amendment of Verizon's pole licenses is not consistent with the public good. In its cross-appeal, the city argues that the trial court erred in granting in part Verizon's petitions for abatement because Verizon failed, as a matter of law, to satisfy its burden of establishing that it is paying more than its proportional share of the common tax burden. We address each argument in turn.

## II. RSA 72:23

Verizon advances five reasons why RSA 72:23, I(b) does not allow the city to tax its use of the public ways: (1) its use of the public ways is a public use, as opposed to a private one; (2) the city cannot establish that it owns the public ways; (3) Verizon has only an intangible right to use the public ways, as opposed to an interest in the occupation of the real property itself; (4) its use of the land cannot be properly assessed; and (5) the city's "leases or other agreements" with Verizon did not require the payment of a tax.

The issues raised by Verizon require statutory interpretation. This court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *Remington Invs. v. Howard*, 150 N.H. 653, 654 (2004). In interpreting a statute, we first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. *Id.* Where the language of a statute is clear on its face, its meaning is not subject to modification. *Id.* We will neither consider what the legislature might have said nor add words that it did not see fit to include. *Id.* Unless we find that the statutory language is ambiguous, we need not look to legislative intent. *Id.* We review the trial court's interpretation of a statute *de novo. Id.*

Verizon first argues that its use of the public ways is a public use, as opposed to a private one, and, therefore, it cannot be subject to taxation under the statute. We disagree.

In pertinent part, RSA 72:23, I(b) states:

> All leases and other agreements, the terms of which provide for the use or occupation by others of real or personal property owned by the state or a city, town, school district, or village district, entered into after July 1, 1979, shall provide for the payment of properly assessed real and personal property taxes by the party using or occupying said property no later than the due date.

■ We hold that the language of RSA 72:23, I(b) is unambiguous. According to the plain language of the statute, leases and other

agreements which permit the use or occupation of public property must provide for the payment of properly assessed real estate taxes. The statute does not include an exemption for private companies that use or occupy public property to provide a public service. Therefore, we conclude that, irrespective of the type of service to be provided, the legislature intended for leases and other agreements that permit the use or occupation of public property to include a provision requiring payment of properly assessed real estate taxes.

Second, Verizon argues that because the city cannot establish that it owns the public rights of way, RSA 72:23, I(b) does not permit the city to assess real estate taxes for Verizon's use of the public ways. We disagree.

In matters of statutory interpretation, we adhere to the principles set forth above. We further note that we do not construe statutes in isolation; instead, we attempt to do so in harmony with the overall statutory scheme. *Nilsson v. Bierman,* 150 N.H. 393, 395 (2003). When interpreting two statutes which deal with a similar subject matter, we construe them so that they do not contradict each other, and so that they will lead to reasonable results and effectuate the legislative purpose of the statutes. *Id.*

As set forth above, leases or other agreements "which provide for the use or occupation by others of real or personal property *owned* by ... a city ... shall provide for the payment of properly assessed real and personal property taxes by the party using or occupying said property." RSA 72:23, I(b) (emphasis added).

Because the legislature did not define "own," we look to other statutes concerning public ways in order to construe RSA 72:23, I(b) in harmony with the overall statutory scheme. For example, RSA 229:1 (1993) describes the methods by which public highways are created. Specifically, it states that a public highway may be created in any one of four ways: (1) through the taking of land by eminent domain and the laying out of a highway by some governmental authority; (2) through the construction of a road on public land; (3) through twenty years of use by the public; or (4) by dedication and acceptance. *Polizzo v. Town of Hampton,* 126 N.H. 398, 401 (1985).

The method used in creating the highway dictates the nature of the municipality's interest in the land. In instances where a municipality receives a deed to a highway or obtains the highway as a result of a condemnation proceeding, the municipality acquires a fee simple interest in the highway. 16 P. LOUGHLIN, NEW HAMPSHIRE PRACTICE, MUNICIPAL LAW AND TAXATION § 45.06, at 431 (1993).

> On the other hand, in instances where a [highway] was established by a dedication and twenty years of public use, by

prescription or by the traditional type of layout procedure exercised throughout most of the nineteenth and twentieth centuries, the municipality ... [does] not have a fee simple interest in the [highway].

*Id.* Rather, in these instances, the highway "is ... an easement, held in trust by government for the use of the public." H.B. WAUGH, JR., A HARD ROAD TO TRAVEL 4 (1997).

█ Returning to the plain language of RSA 72:23, I(b), it is clear that when a city's land is used or occupied by someone other than the city, the lease or agreement between the city and the user or occupier must include a provision requiring the user or occupier to pay real estate taxes. The statute does not define the manner in which the city must "own" the land; nor does it require the city to own the land in fee simple in order to impose a real estate tax. When the statutory scheme is viewed as a whole, however, it is evident that the legislature is aware that a city rarely holds title to the public ways in fee simple. Rather, because of the legislatively-defined ways in which public highways are created, a city typically has only a qualified property interest in the public ways. We thus conclude that the legislature intended for this type of ownership to be sufficient to allow a city to impose real estate taxes on a user or occupier of the public ways.

In the present case, the trial court stated: "Whatever interests the [c]ity or State possess[es] in the rights of way, those interests are 'owned' for purposes of determining whether non-governmental entities that use or occupy those interests in the rights of way must pay properly assessed real estate taxes." For the reasons set forth above, we agree with the trial court's determination. We thus conclude that the trial court did not err when it ruled that the city could impose a tax on Verizon.

Third, Verizon argues that because it has only an intangible right to use the public ways, as opposed to an interest in the occupation of the real property itself, its use of the public ways cannot properly be subject to the assessment of real estate taxes. We disagree.

█ In *Rochester I*, we were asked to decide whether the city could require Verizon to pay real estate taxes on the land that Verizon uses pursuant to its pole licenses. *N.E. Tel. & Tel. Co.*, 144 N.H. at 120. We noted that we "have implied that pole licenses may not be taxable as real estate because a license does not ordinarily constitute a property interest." *Id.* Nonetheless, after careful consideration of RSA 72:23, I(b), we held that whatever rights were conferred by the license agreement, the statute subjected those rights to properly assessed real estate taxes. *Id.* at 120-21.

We have thus already addressed Verizon's argument and decline to alter our prior ruling.

Fourth, Verizon argues that its use of the public ways cannot be subject to the assessment of real or personal property taxes because its use of the land cannot be properly assessed. More specifically, Verizon argues that its use cannot be properly assessed because the land it uses pursuant to its pole licenses has no fair market value.

As we have already stated, when a city's real or personal property is used or occupied by someone other than the city, the lease or other agreement between the city and the user or occupier must provide for the payment of "properly assessed" real and personal property taxes. RSA 72:23, I(b).

When we were previously asked to review a trial court's appraisal of the fair market value of a utility plant for taxation purposes, we stated:

> The establishment of market value as a test for taxation purposes presupposes a market. In instances such as this where only a part of an integrated system is involved, the difficulty, if not the impossibility of finding an actual customer, especially where, as here, the owner has a lawful monopoly in the surrounding area, is obvious. Yet it is plain that to hold there is no market value in such instances would mean that valuable property would entirely escape its just share of the burden of taxation. Such a policy would make neither good law nor good sense. Courts recognizing this have acted accordingly and have considered all factors calculated to influence an assumed buyer and seller in a free market.

*Public Service Co. v. New Hampton*, 101 N.H. 142, 146 (1957).

The trial court properly recognized that the principles we articulated in *Public Service Co.* are applicable in the present case. Accordingly, the trial court rejected the general proposition, advanced by Verizon, that because the public ways have no fair market value, its use of the public ways cannot be properly assessed. We agree with the city that the trial court's ruling was correct.

Fifth, Verizon argues that because its "leases or other agreements" with the city did not require the payment of a tax, the city cannot claim the benefits of RSA 72:23, I(b). Essentially, Verizon contends that the city cannot unilaterally change the terms of its licenses.

RSA 231:163 (1993) states: "The selectmen, after notice to any such licensee and hearing, may from time to time revoke or change the terms and conditions of any such license, whenever the public good requires." We

hold that this language is unambiguous. Under the plain language of the statute, a city may change the terms and conditions of a license that it has issued whenever the public good requires.

Moreover, in *Rochester I*, we held that because the city was required to implement the standards set forth in RSA 72:23, (I)(b), the public good required the city to amend Verizon's licenses. *Id.* at 122.

In the present case, the trial court rejected Verizon's argument that the city could not unilaterally amend its pole licenses. For the reasons set forth above, we conclude that this was not error.

*III. Equal Protection*

Verizon contends that its equal protection rights are being violated. *See* N.H. CONST. pt. I, arts. 2, 12, pt. II, art. 5; U.S. CONST. amend. XIV. Specifically, Verizon argues that the city has issued real estate tax assessments to Verizon, but not to the gas, cable and electric companies that use the public ways in a manner indistinguishable from Verizon's, thus violating its right to equal protection.

Recently, we clarified our equal protection analysis. *See In re Sandra H.*, 150 N.H. 634 (2004). We noted that, in accordance with the United States Supreme Court, this State's equal protection guarantee is essentially a direction that all persons similarly situated should be treated alike. *Id.* at 637. "The Federal and State Equal Protection Clauses do not demand that a statute necessarily apply equally to all persons or require things which are different in fact to be treated in law as though they were the same." *Id.* at 638 (quotation omitted). Where a classification realistically reflects the fact that the two groups are not similarly situated in certain circumstances, and the legislation's differing treatment of the groups is sufficiently related to a government interest, it will survive an equal protection challenge. *Id.*

Verizon argues that RSA 72:23 creates an unconstitutional classification of taxpayers. This classification does not involve a suspect class such as race, creed, color, gender, national origin or legitimacy; nor does it affect a fundamental right. *See Estate of Robitaille v. N.H. Dep't of Rev. Admin.*, 149 N.H. 595, 596 (2003). Thus, in order to determine whether Verizon's right to equal protection is being violated, we must apply the rational basis test, under which legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate State interest. *Id.* at 596-97. Because Verizon is challenging the legislation, it has the burden to prove that the classification is arbitrary or without some reasonable justification. *Id.* at 597.

The trial court ruled that in "order to succeed on its equal protection challenge to the application of RSA 72:23, Verizon must demonstrate that the City has treated it differently from other utilities that are similarly situated." The trial court then stated: "Even assuming Verizon has met this burden, however, it has failed to demonstrate that its total tax obligation is greater than its share of the common burden."

In light of our recent decision in *In re Sandra H.*, we vacate the trial court's ruling and remand for application of the equal protection analysis set forth therein. The first step in an equal protection analysis is to determine the appropriate standard of review. In this case, the trial court must apply the rational basis test to determine whether the statute rationally relates to a legitimate government interest. In applying the rational basis test, the trial court may properly consider whether differences between the utilities justify varying treatment by the legislature. The record is insufficiently developed with respect to how the various utilities are taxed. Consequently, we remand for further proceedings consistent with this opinion.

## IV. Public Good

Verizon next argues that the city's amendment of its pole licenses is not consistent with the public good. We disagree.

In *Rochester I*, Verizon argued the city's proposed amendments to its pole licenses were not authorized by RSA 231:163 because they were not required by the public good. *N.E. Tel. & Tel. Co.*, 144 N.H. at 121. We rejected Verizon's argument and reiterated the rule that a measure or act is in the public good if it is not forbidden by law and is to be reasonably permitted under all of the circumstances. *Id.* at 122. We held that because RSA 72:23, (I)(b) required the city to amend Verizon's pole licenses, the amendments were required by the public good. *Id.* We reach the same conclusion today.

## V. Tax Abatement

Finally, the city argues that the trial court erred in granting in part Verizon's petitions for abatement. We agree.

In its final order, the trial court found that the city failed to follow a recognized methodology in determining the market value of Verizon's use of the land pursuant to its pole licenses. In reaching this conclusion, the trial court relied upon the testimony of Verizon's expert, Charles Seymour, who explained the methodology the city used to calculate the amount of real estate tax Verizon owed the city. Seymour testified that the city's methodology was flawed because, in his opinion, Verizon's real estate

interests in the public ways have no value. As a result, the trial court granted Verizon's petitions for abatement "to the extent that the [c]ity's tax bills . . . must be reassessed based on an appropriate methodology." .

In *Porter v. Town of Sanbornton*, 150 N.H. 363, 369 (2003), we noted that disproportionality, and not methodology, is the linchpin in establishing entitlement to a petition for abatement. In *Porter*, the town reassessed the plaintiffs' waterfront properties upward by 18%. *Porter*, 150 N.H. at 366. The plaintiffs filed a petition for abatement contending that the 18% across-the-board increase caused their assessments to be disproportionate compared to the assessments of property of other classes of owners within the town. *Id.* On appeal, the plaintiffs argued that they could prove disproportionate tax burdens by establishing that the town lacked a sound methodology when it established the assessment. *Id.* at 368. We rejected this argument and held that to carry the burden of proving disproportionality, a taxpayer must establish that the taxpayer's property is assessed at a higher percentage of fair market value than the percentage at which property is generally assessed in the town. *Id.* We reasoned that while it is possible that a flawed methodology may lead to a disproportionate tax burden, the flawed methodology does not, in and of itself, prove the disproportionate result. *Id.* at 369. Our holding in *Porter* controls the outcome of the present case.

■ Here, the trial court granted in part Verizon's petitions for abatement because the city "failed to follow a recognized methodology in reaching its conclusions regarding the market value of Verizon's use of the land pursuant to its pole licenses." Given our intervening holding in *Porter*, the trial court applied an erroneous standard for the granting of a petition for abatement. Verizon is only entitled to a tax abatement if it carries its burden of proving disproportionality by establishing that its property is assessed at a higher percentage of fair market value than the percentage at which property is generally assessed in the city. *Id.* Accordingly, we reverse the trial court's ruling and remand for further proceedings consistent with this opinion.

The city also argues that the portion of the *amicus* brief regarding whether municipal taxation of pole licenses is preempted by the New Hampshire Public Utility Commission's regulatory authority was not preserved for appeal and, consequently, should be stricken. We have consistently held that we will not consider issues raised on appeal that were not presented in the trial court. *LaMontagne Builders v. Bowman Brook Purchase Group*, 150 N.H. 270, 274 (2003). Because this issue was

not raised in the trial court, we decline to address it here. Accordingly, the city's motion to strike is granted.

*Affirmed in part; vacated in part; reversed in part; and remanded.*

BRODERICK, C.J., and DALIANIS and GALWAY, JJ., concurred.