Rockingham
No. 2005-934

GAIL C. NADEAU 1994 TRUST & a.

v.

CITY OF PORTSMOUTH & a.

Argued: March 15, 2007
Opinion Issued: August 17, 2007

*Shaines & McEachern, P.A.*, of Portsmouth (*Robert A. Shaines* and *Laurie A. Lacoste* on the brief, and *Mr. Shaines* orally), and *Nadeau Law Offices, P.L.L.C.*, of Portsmouth (*J.P. Nadeau* and *Justin P. Nadeau* on the brief), for the petitioners.

*Kelly A. Ayotte*, attorney general (*Anne M. Edwards*, associate attorney general, and *Laura E. B. Lombardi*, assistant attorney general, on the brief, and *Ms. Edwards* orally), for respondent State of New Hampshire.

BRODERICK, C.J. The State appeals an order of the Superior Court (*McHugh*, J.) ruling that tax assessments made under the education property tax, RSA 76:3 (2003), for tax years 2002, 2003 and 2004 were unconstitutionally disproportionate. We reverse.

The petitioners own commercial and residential real estate in the City of Portsmouth and the Town of Rye. This case consolidates four actions

brought by the petitioners appealing denials of tax abatement applications filed pursuant to RSA 76:16 (Supp. 2006). The petitioners claimed that the education property tax assessed pursuant to RSA 76:3 and :8 (2003 & Supp. 2007) is disproportionate in violation of Part II, Article 5 of the New Hampshire Constitution. The trial court joined the State of New Hampshire as a respondent pursuant to RSA 514:10 (2007) because the petitioners challenged the constitutionality of the tax.

Following a bench trial, the court ruled that the petitioners' tax assessments for the 2002 tax year were unconstitutionally disproportionate and evidenced a widespread scheme of intentional discrimination. Upon motion by the petitioners, the trial court subsequently ruled that, based upon the evidence regarding the assessments for tax years 2003 and 2004, the constitutional defects in the tax as applied to tax year 2002 were present for those tax years as well. The State appeals, arguing that the trial court: (1) erred by ruling that the petitioners are not required to prove that they are paying more than their proportionate share of the property tax; (2) erred in determining that the tax, as applied to the petitioners, violated Part II, Article 5 of the State Constitution; and (3) lacked jurisdiction to declare the tax unconstitutional.

The trial court's order recognizes at the outset that

> [t]he plaintiffs' appeals are not conventional in the sense that they do not claim their individual assessments are higher than similar properties in their municipalities. In fact, they never introduced their individual assessments into evidence. Rather, they focused on the alleged unequal property values in their [own] and other municipalities as resulting in their having to pay an unfair amount of the statewide educational property tax.

Nevertheless, the trial court found that our decision in *Sirrell v. State*, 146 N.H. 364 (2001), "appears to permit a collateral attack on general as well as individual property assessments." The trial court reasoned that because the plaintiffs in *Sirrell* used the same approach as the petitioners in this case, "namely . . . claiming that because property in several communities was appraised at both less and more than its fair market value, and because of the [department of revenue administration]'s fundamentally flawed equalization process, they were forced to pay an unequal and unfair share of the statewide property tax burden." Accordingly, the trial court ruled that it is not a "prerequisite of a tax abatement appeal" that a property owner present "evidence of his or her own property's fair market value and then a comparison of that value with the municipality's assessment." Rather, the trial court ruled:

The property owner can in fact make the general arguments that the plaintiffs make in this case. The burden remains with the property owner to show actual harm. However, that harm can be shown by proving widespread disparity in and between municipalities. The plaintiffs are not required to meet their burden by focusing in on the particular assessment placed on their property.

Pursuant to RSA 76:17 (2003), the superior court in an abatement proceeding "shall make such order thereon as justice requires." We have consistently held that in granting an abatement, "justice requires" more than simply determining that a tax is unlawful, because that would merely shift the plaintiff's tax burden to other taxpayers. *See Bretton Woods Co. v. Carroll*, 84 N.H. 428, 430-31 (1930); *Porter v. Town of Sandwich*, 153 N.H. 175, 177 (2006). "Since *Bretton Woods*, we have repeatedly reaffirmed that the issue in an abatement proceeding is whether the government has taxed the plaintiff out of proportion to other property owners in the taxing district." *Porter*, 153 N.H. at 177. Accordingly, in order to prevail in a petition for abatement, the petitioner must "prove that his tax was greater than it should have been with respect to the taxes of other property owners in the taxing district." *Ainsworth v. Claremont*, 106 N.H. 85, 87 (1964). Therefore, "[t]he question to be tried is whether the petitioner is unlawfully or unjustly taxed as between him and the other taxpayers." *Id.*

In this case, the trial court did not find that the petitioners had proved that their "property is assessed at a higher percentage of fair market value than the percentage at which property is generally assessed in the [State]." *Porter v. Town of Sanbornton*, 150 N.H. 363, 368 (2003). Rather, the trial court found that the petitioners had met their burden of showing disproportionality simply by proving "a widespread disparity between the purchase price of property in sales occurring in close proximity to April 1, 2002 in four communities and the assessments the municipalities placed on those recently-sold properties." The trial court determined that a showing of general disproportionality was sufficient based upon our decision in *Sirrell* that a declaratory judgment action was available to challenge the statewide property tax upon the basis of widespread intentional discrimination. As the trial court's order notes, procedurally, the only difference between this case and *Sirrell* "was that whereas in *Sirrell* the plaintiffs sought a declaratory judgment asking the court to find that the educational property tax was unconstitutional, the plaintiffs in this case have chosen to attack the law through the abatement process." This procedural difference, however, is fatal to the petitioners' challenge as our

decision in *Sirrell* did not change the burden of showing individual disproportionality in an abatement proceeding. To the contrary, we have never strayed from the rule that in abatement actions taxpayers are required to establish that they paid more than their fair share of taxes. *See, e.g., Sandwich*, 153 N.H. at 177; *Sanbornton*, 150 N.H. at 367; *Bretton Woods*, 84 N.H. at 431; *Amoskeag Mfg. Co. v. Manchester*, 70 N.H. 200, 205 (1899); *Edes v. Boardman*, 58 N.H. 580, 589 (1879).

■ We hold that the trial court erred as a matter of law in ruling in these abatement actions that the petitioners met their burden of proof without offering any "evidence that they are paying more than their proportional share of taxes." *Sanbornton*, 150 N.H. at 367. "[E]ven if multiple petitions are consolidated into a single trial, each plaintiff bears the burden of demonstrating that he or she is paying a higher amount than he or she ought to pay." *Id.* at 369. Proof that the taxpayer paid more than his or her fair share of a tax is an essential element in any abatement case. By failing to offer such proof, the petitioners failed to demonstrate that they were harmed by the tax. *Ainsworth*, 106 N.H. at 89-90.

*Reversed.*

DALIANIS, DUGGAN, GALWAY and HICKS, JJ., concurred.