# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2018-0138, <u>Appeal of Kasey L. Dillon, P.A. & a.</u>, the court on March 8, 2019, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. Petitioners Kasey L. Dillon, P.A., and Edward J. Williams, M.D., appeal a decision of the New Hampshire Board of Medicine (board). In its decision, the board concluded that the petitioners' treatment of a certain patient, K.H., on February 23, 2011, fell below the standards established by RSA 328-D:6, IV (2017) and RSA 329:17, VI (2017), respectively, and thus subjected the petitioners to formal discipline. The petitioners argue that: (1) the board's order is unjust and unreasonable in light of the favorable jury verdict the petitioners received in the civil case that spurred the board's investigation; (2) the board erred by failing to disqualify hearing counsel's expert witness, Colin O'Brien, M.D.; and (3) the board's order and certain factual findings therein are unjust and unreasonable because they are not supported by sufficient evidence. We affirm.

The following facts were found by the board or are otherwise derived from the record. The petitioners are, respectively, a physician assistant and a physician. They were both working in the Emergency Department of Wentworth-Douglass Hospital the evening of February 23, 2011. K.H. presented to Wentworth-Douglass's emergency room that night after being ill for five days with a fever, chills, vomiting, diarrhea, upper abdominal pains, and a cough. Dillon conducted a physical examination of K.H. After the physical examination, Dillon ordered certain testing, including a complete blood count (CBC). After Dillon conferred with Williams, influenza and hepatitis tests were also ordered. No chest x-ray was ordered or conducted. The CBC disclosed certain abnormal results, including a low white blood cell count and 36% bands. However, Dillon did not record these abnormalities on K.H.'s emergency room physician report.

Dillon ordered treatment for K.H., which included two liters of intravenous normal saline and Zofran, an anti-nausea medication. The petitioners ultimately diagnosed K.H. with a gastrointestinal virus. Dillon discharged K.H. with prescriptions for Tussionex, a cough suppressant, as well as more Zofran, and instructed her to follow up with her primary care physician. The following day, K.H. returned to Wentworth-Douglass and was diagnosed with pneumonia, impending respiratory failure, acute respiratory

distress syndrome, and sepsis. Her condition required surgical intervention and a seven-week hospitalization.

In 2014, the board received a copy of a civil complaint filed in Strafford County Superior Court. See RSA 329:17, II (2017). The complaint alleged that the petitioners were grossly negligent in their treatment of K.H. The board then commenced an investigation of the allegations in the complaint. The civil proceeding that led to the board's investigation culminated in a jury verdict for the petitioners. However, based on information gathered during the board's investigation, including letters received from the petitioners, the board proceeded with the instant disciplinary action. At the hearing, the board heard testimony and received various exhibits into evidence. The board ultimately concluded that Dillon's treatment of K.H. fell below the standards set by RSA 328-D:6, IV, and that Williams' treatment of K.H. fell below the standards of RSA 329:17, VI. See RSA 328-D:6, IV (authorizing board to discipline licensed physician assistant upon finding, after hearing, that licensee "[h]as engaged in dishonest or unprofessional conduct or has been grossly or repeatedly negligent in practicing his or her profession or in performing activities ancillary to the practice of his or her profession or any particular aspect or specialty thereof"); RSA 329:17, VI(c) (authorizing board to discipline licensed physician upon finding, after hearing, that licensee "[h]as displayed medical practice which is incompatible with the basic knowledge and competence expected of persons licensed to practice medicine or any particular aspect or specialty thereof"). The board also concluded that formally reprimanding the petitioners was the appropriate measure of discipline to impose. See RSA 328-D:7 (2017); RSA 329:17, VII (2017). This appeal followed.

RSA chapter 541 governs our review of the board's decision. RSA 328-D:8 (2017); RSA 329:17, VIII (2017); see Appeal of Rowan, 142 N.H. 67, 70 (1997). We will not set aside the board's order except for errors of law, unless we are satisfied, by a clear preponderance of the evidence, that it is unjust or unreasonable. Appeal of Dell, 140 N.H. 484, 487-88 (1995); RSA 541:13 (2007). The petitioners, as the parties seeking to set aside the board's order, have the burden of proof. RSA 541:13. The board's findings of fact are presumed prima facie lawful and reasonable. Id.; Dell, 140 N.H. at 497. In reviewing the board's findings, our task is not to determine whether we would have found differently than did the board, or to reweigh the evidence, but rather to determine whether the findings are supported by competent evidence in the record. Dell, 140 N.H. at 498. However, we review the board's rulings on issues of law de novo. See In the Matter of Bloomfield, 166 N.H. 475, 478 (2014).

We first address the petitioners' argument concerning the effect of the civil malpractice case on the board's proceeding. The petitioners argue that, in light of the favorable jury verdict they received in the civil case that gave rise to the board's investigation, the board's order to the contrary is unjust and

unreasonable. However, they never presented this argument to the board, in their motion for reconsideration or otherwise. Accordingly, it is not preserved for our review. See RSA 541:4 (2007) (providing that "no ground not set forth [in a motion for rehearing] shall be urged, relied on, or given any consideration by the court"); Appeal of Northern New England Tele. Operations, LLC, 165 N.H. 267, 272 (2013); Appeal of Walsh, 156 N.H. 347, 352 (2007); Appeal of Coffey, 144 N.H. 531, 533 (1999) ("Issues not raised in the motion for rehearing cannot be raised on appeal."). Even if we were to conclude otherwise, the petitioners have not adequately developed their argument. See Lennartz v. Oak Point Assocs., P.A., 167 N.H. 459, 464 (2015) (explaining that judicial review is not warranted for complaints regarding adverse rulings without developed legal argument). For these reasons, we decline to consider the petitioners' argument.

We turn next to the petitioners' arguments concerning hearing counsel's expert witness, O'Brien. The petitioners contend that the board violated their due process rights under the State Constitution by failing to disqualify O'Brien. See N.H. CONST. pt. I, art. 15. They do not argue that their due process rights under the Federal Constitution were violated.

At the time of the petitioners' hearing, O'Brien was a member of the Medical Review Subcommittee (MRSC), a subcommittee composed of persons who are nominated by the board and appointed by the governor and council. See RSA 329:17, V-a (2017) (amended 2018); N.H. Admin. R., Med 102.08. The MRSC investigates possible misconduct by licensees. See RSA 329:18, I (2017). The petitioners argue that O'Brien, in light of his status as an MRSC member sharing a common purpose with the board, "had an undue influence with the Board or, at a minimum, the appearance thereof." They argue further that O'Brien's statutory duty to protect the public raises "the appearance of bias on the part of . . . O'Brien in favor of [the patient], as a member of the public, and against the petitioners." See RSA 329:1-aa (2017) ("The primary responsibility and obligation of the board of medicine is to protect the public."); RSA 329:18, I (authorizing the board to investigate possible misconduct through the MRSC). They also note that the initial investigation of the petitioners by the MRSC was performed by a former member of the subcommittee, which "raised the prospect" that O'Brien's testimony was biased in favor of his former colleague. They argue that O'Brien's "lack of impartiality, or appearance thereof, . . . hindered the ability of the petitioners to receive a fair hearing," and that this hindrance "became self-evident during the hearing when the Board critically cross-examined the petitioners and their expert witness . . . while at the same time all but accepted . . . O'Brien's opinions from the outset."

With respect to the petitioners' due process claim, we have said that, when a single individual commingles investigative, accusative, and adjudicative functions, the mere appearance of prejudice may be sufficient to violate due

process.  Appeal of Mullen, 169 N.H. 392, 399 (2016).  We have also recognized, however, that the legislature does not offend due process merely by assigning investigative and adjudicative functions to the same administrative body.  Appeal of Trotzer, 143 N.H. 64, 68 (1998).  Where investigative, accusative, and adjudicative functions are commingled within a single administrative agency, rather than within a single individual, a party alleging a due process violation must show actual bias in order to prevail.  See id.

In Trotzer, a psychologist was disciplined by the New Hampshire Board of Examiners of Psychology and Mental Health Practice (psychology board).  Id. at 65.  He argued on appeal that his due process rights were violated when a member of the psychology board who was recused from participating in the disciplinary proceeding nevertheless "s[a]t at the prosecution table and assist[ed] in the proceedings."  Id. at 69.  We concluded that the recused board member's "conduct did not commingle investigative, accusative, and adjudicative functions within the same individual."  Id.  We explained:

> Even assuming [the psychology board member] had an investigative and accusative role with respect to the allegations . . . there is no evidence to suggest, nor does [the psychologist] allege, that she had an adjudicative role.  To the contrary, [the psychology board member] appropriately refrained from participating in the actions of the board and neither voted nor deliberated in any matter as a board member concerning [the psychologist's] disciplinary proceeding.

Id.  Thus, the combination of investigative and accusative functions alone was not sufficient to render the proceeding unconstitutional.  Id. at 69-70.

Here, O'Brien did not commingle investigative, accusative, and adjudicative functions.  Even assuming he had an investigative and accusative role, there is no evidence to suggest that he had an adjudicative role.  There is no evidence that he deliberated or voted with the board in reaching its ultimate disposition as to whether the petitioners' conduct came within RSA 328-D:6 and/or RSA 329:17, VI.  See id. at 69; see also Mullen, 169 N.H. at 399-400 (concluding that agency commissioner did not have adjudicative function despite ability to order a de novo adjudicatory hearing in certain circumstances; commissioner "does not make the determination regarding whether the department has proven" its case).  Thus, to prevail in their due process claim, the petitioners must demonstrate actual bias.  Trotzer, 143 N.H. at 68; see also Mullen, 169 N.H. at 399; Appeal of Office of Consumer Advocate, 134 N.H. 651, 660 (1991); Appeal of Beyer, 122 N.H. 934, 940 (1982).

The petitioners have not demonstrated actual bias.  The mere fact that O'Brien is a member of the MRSC does not establish actual bias.  See Trotzer,

4

143 N.H. at 68 (stating that "it is permissible for one assistant attorney general to represent the board in its quasi-judicial capacity and another assistant attorney general to prosecute the case before the board, provided no actual bias exists" (quotation and brackets omitted)); Appeal of Maddox a/k/a Cookish, 133 N.H. 180, 182 (1990) (concluding no actual bias shown where adjudicator was employee of agency that plaintiff had brought action for damages against). Further, the petitioners' arguments that O'Brien's statutory duties or his professional relationships raised an appearance of bias are per se insufficient to meet their burden of showing actual bias. See Mullen, 169 N.H. at 399 (differentiating apparent bias from actual bias). As to their claim that the effect of O'Brien's bias on the proceeding became "self-evident" when members of the board critically cross-examined the petitioners and their expert but not O'Brien, we have reviewed the transcript of the hearing and cannot say that the board's questions demonstrate the existence of actual bias. The questions posed by the board members primarily sought to assist the board in conducting the proceeding. See Trotzer, 143 N.H. at 68. We thus find no due process violation.

In addition to their due process argument, the petitioners contend that allowing O'Brien to testify violated RSA 329:18, II. See RSA 329:18, II (2017) (authorizing the board to "retain expert witnesses . . . to assist with any investigation or adjudicatory proceeding," but providing that members of the board "are not eligible for retainment"). They point out that O'Brien, as a member of the MRSC, was "affiliat[ed]" with the board, and argue that "the Board and the MRSC are indistinguishable for the purposes of the statutory prohibition on expert witness retention" because "[t]he Board and the MRSC work with the same purpose and have the same duties, responsibilities and privileges."

Even assuming, without deciding, that RSA 329:18, II prevents board members from testifying at adjudicatory proceedings before the board, as opposed to merely preventing them from being compensated or "retained" as expert witnesses for such testimony, nothing in the record suggests that O'Brien is a member of the board. See RSA 329:2 (2017) ("There shall be a board of medicine consisting of 11 members . . . ."); RSA 329:4, I (2017) ("The commissioner or the medical director of the department of health and human services shall serve as a voting member of the board . . . ."); RSA 329:4, II (2017) ("The remaining 10 members of the board shall be appointed . . . by the governor with the advice and consent of the council."); N.H. Admin. R., Med 103.01 ("The board consists of 11 members who are appointed by the governor . . . ."). Thus, the statute does not apply to him. See Appeal of FairPoint Logistics, Inc., 171 N.H. ___, ___ (decided Sept. 28, 2018) (slip op. at 6) ("[W]e will not add language to a statute that the legislature did not see fit to include."). We do not agree with the petitioners that any shared purpose or similarity in duties or powers transmutes MRSC members into board members for purposes of RSA 329:18, II. See id.

5

We turn now to the petitioners' arguments concerning the sufficiency of the evidence before the board. They argue that the board's ultimate conclusions that the petitioners' conduct fell below the standards of RSA 328-D:6, IV and RSA 329:17, VI, respectively, are not supported by sufficient evidence. In essence, they argue that their testimony at the hearing, as well as the testimony of their expert and the evidence they submitted to the board, established that their treatment of K.H. was appropriate, notwithstanding O'Brien's testimony to the contrary.

RSA 328-D:6, IV provides that "[t]he board, after hearing, may take action against [a physician assistant] licensed under this chapter upon finding that the licensee . . . [h]as engaged in dishonest or unprofessional conduct or has been grossly or repeatedly negligent in practicing his or her profession . . . ." The board found that Dillon's conduct came within this statute. RSA 329:17, VI(c) provides that "[t]he board, after hearing, may take disciplinary action against [a licensed physician] upon finding that the [physician] [h]as displayed medical practice which is incompatible with the basic knowledge and competence expected of persons licensed to practice medicine or any particular aspect or specialty thereof." The board found that Williams' conduct fell within this statute.[1] This is a close case, however, having reviewed the record, we find that the petitioners have failed to demonstrate that there was no competent evidence from which the board could conclude that Dillon's conduct was, at a minimum, unprofessional, and that Williams' conduct was incompatible with at least an aspect of the medical competence expected of licensed physicians. See RSA 328-D:6, IV; RSA 329:17, VI(c). Where, as here, the board was faced with conflicting testimony from medical experts, it could resolve such conflicts by using its own expertise and technical judgment. See Dell, 140 N.H. at 496; Appeal of Gamas, 138 N.H. 487, 490-91 (1994).

The petitioners further argue that certain of the board's factual findings are not supported by sufficient evidence. Specifically, they argue that the board's conclusion that Dillon failed to appreciate abnormalities in K.H.'s CBC lab results is not supported by sufficient evidence, and that the board's conclusion that Williams did not personally examine K.H. is not supported by

---

[1] In its order, the board stated that "[u]nder RSA 329:17 VI [it] may take disciplinary action against [a licensed physician] if it determines that a licensed physician . . . 'has displayed a pattern of behavior which is incompatible with the basic knowledge and competence expected of persons licensed to practice medicine . . .'." However, RSA 329:17, VI(c) was amended in 2009, two years prior to the petitioners' treatment of K.H. Laws 2009, 206:14. This amendment removed the requirement that the physician have displayed a "pattern of behavior," and replaced it with a requirement that the physician have displayed "medical practice which is incompatible with the basic knowledge and competence expected of persons licensed to practice medicine or any particular aspect or specialty thereof." Id. (emphasis added). Although the board seems to have misidentified the pertinent statutory language, its ultimate conclusion was that Williams "has displayed medical practice which is incompatible with the basic knowledge and competence of a person licensed to practice medicine." Thus, its ultimate conclusion tracks the correct statutory language.

6

sufficient evidence.  With regard to the challenged finding as to Williams, it is unclear if the board actually concluded that Williams did not examine K.H.  In its order, the board states that "Williams should have used the information provided to him by Respondent Dillon to determine the need to actually examine K.H. in the Emergency Room."  The board also states that Williams' "lack of recall about whether he physically examined K.H., and his failure to give closer observation of a patient with multiple-organ dysfunction, fell below the standard of care owed to K.H."  Even assuming these statements amount to a finding that Williams did not examine K.H., we conclude that the petitioners have failed to meet their burden of showing that there was no competent evidence from which the board could properly make this finding.  See Dell, 140 N.H. at 497-98.  Specifically, in a letter submitted to a board investigator, Williams stated that his "only involvement" in K.H.'s treatment was discussing said treatment with Dillon.

With regard to the board's finding that Dillon failed to appreciate abnormalities in K.H.'s lab results, here too we conclude that the petitioners have not shown that there was no competent evidence from which the board could properly make this finding.  See id.  In a letter sent to a board investigator, Dillon stated that K.H.'s "CBC was normal."  Counsel for the petitioners represented to the board, as well as to this court, that this statement was included in Dillon's letter due to counsel's own error, and asks that we not attribute his error to Dillon.  Such errors are, of course, regrettable.  Nonetheless, even assuming without deciding that the board should have accepted counsel's representations and disregarded the mistaken statement in Dillon's letter, other evidence in the record provides support for the board's conclusion that Dillon failed to appreciate abnormalities in K.H.'s lab results.  Specifically, in a deposition that was submitted to the board, Dillon stated that K.H.'s CBC values "were not clinically significant."

For the reasons discussed above, we affirm the board's order.

Affirmed.

LYNN, C.J., and HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Eileen Fox,**
**Clerk**

7